66 N.J. 72 (1974)
328 A.2d 235
ASSOCIATION OF NEW JERSEY STATE COLLEGE FACULTIES, INC., ASSOCIATION OF NEW JERSEY COUNTY COLLEGE FACULTIES, INC., AND THE NEW JERSEY EDUCATION ASSOCIATION, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY BOARD OF HIGHER EDUCATION, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued September 23, 1974.
Decided November 20, 1974.
*73 Mr. Stephen Skillman, Assistant Attorney General, argued the cause for the appellant (Mr. William F. Hyland, Attorney General, attorney; Mr. John J.M. Prager, Deputy Attorney General, on the brief).
Mr. William S. Greenberg argued the cause for the respondents (Messrs. Sterns & Greenberg, attorneys; Mr. Michael J. Herbert, on the brief).
The opinion of the Court was delivered by JACOBS, J.
The Appellate Division, in an unreported opinion, set aside the Board of Higher Education's guidelines on outside employment. N.J.A.C. 9:2-10.2 et seq. We granted certification on the Board's application. 65 N.J. 290 (1974).
In November 1971 the Board of Higher Education promulgated a Code of Ethics pursuant to the Conflicts of Interest Law. N.J.S.A. 52:13D-12 et seq.; N.J.S.A. 52:13D-23; see also N.J.A.C. 9:2-10.1. That Code established guidelines for outside employment in very general and soundly purposed terms, which could hardly have been found objectionable, and which were not objected to by the plaintiffs who were the union or association representatives of the college faculties and the non-managerial administrative staffs Thus the guidelines set forth, inter alia, that college employees shall not engage in any business or transactions or professional activities which are in "substantial conflict" with the proper discharge of their public duties, that they shall not use their official positions to secure "unwarranted privileges" for themselves, that they shall not act in their official capacities on matters in which they have such direct or indirect financial interests as might reasonably be expected *74 to impair their "objectivity or independence of judgment," and that they shall not accept gifts or other things of value under circumstances where it might reasonably be inferred that the things of value were being given "for the purpose of influencing" them in the discharge of their official duties.
In February 1973 the Board adopted further guidelines on outside employment which are fully set forth in N.J.A.C. 9:2-10.2 et seq. These guidelines also contained certain provisions in very general and soundly purposed terms which could hardly have been found objectionable. Thus they provided that a full-time employee of a public institution of higher education or of the Department of Higher Education may engage in outside employment only if the outside employment does not: "1. Constitute a conflict of interest; 2. Occur at a time when the employee is expected to perform his or her assigned duties; 3. Diminish the employee's efficiency in performing his or her primary work obligation at the institution or the Department." N.J.A.C. 9:2-10.2(b). We do not understand that the plaintiffs ever voiced any objection to the foregoing. However they did object to additional guidelines which they said imposed restrictions beyond those in the formal contract then in effect between the "State of New Jersey and Association of New Jersey State College Faculties, Inc." That contract provided that the faculty member's "primary responsibility" was to the college in which he was employed and that "faculty members who render off-campus services for compensation on a regular basis shall formally advise their immediate administrative superior (department chairman, dean, vice-president, etc.) of their specific commitments."
In contrast to the aforequoted limited contractual requirement of notice to the immediate superior, the February 1973 guidelines provided in substantial effect that all regular or continuing outside employment of a full-time employee shall have the prior and continuing written approval *75 of the chief executive officer of the institution and that no full-time employee may perform part-time work for another public institution, unless the employee has the prior and continuing written approval of the chief executive officer of his institution, along with the approval of the chief executive officer of the institution where the work is to be performed. N.J.A.C. 9:2-10.2(c), (d). An additional provision in the guidelines set forth that no full-time employee may receive compensaton from his institution in excess of his regular full-time salary except as specifically authorized in paragraphs 1 through 4 of section (e) of the guidelines. The plaintiffs objected to the foregoing restrictions which they urged were "terms and conditions" of employment and were mandatorily negotiable as such under the New Jersey Employer-Employee Relations Act. N.J.S.A. 34:13A-1 et seq.; N.J.S.A. 34:13A-5.3. Their objections were rejected by the Board and thereafter they appealed to the Appellate Division where they duly renewed them.
The Appellate Division noted that under N.J.S.A. 18A:3-13 et seq. the Board had authority to promulgate rules governing higher education in New Jersey and that under N.J.S.A. 52:13D-23 it was mandated to promulgate a code of ethics. But, after pointing out that the guidelines on outside employment intimately and directly affected "the work and welfare of the college employees," it concluded that they related to "terms and conditions" of employment within the contemplation of N.J.S.A. 34:13A-5.3, did not affect any "major educational policy" within the contemplation of Dunellen Bd. of Ed. v. Dunellen Ed. Assn., 64 N.J. 17 (1973), and were accordingly subject to mandatory negotiation under the statute as judicially construed and applied. See Burlington Cty. Col. Fac. Assoc. v. Bd. of Trustees, 64 N.J. 10 (1973); Bd. of Ed. Englewood v. Englewood Teachers, 64 N.J. 1 (1973); Assoc. of N.J. State Col. Fac. v. Dungan, 64 N.J. 338 (1974); see also Rutgers Council v. N.J. Bd. Higher Education, 126 N.J. Super. 53 (App. Div. 1973).
*76 In Dunellen, supra, 64 N.J. 17, we dealt with Chapter 303 of the Laws of 1968 known as the "New Jersey Employer-Employee Relations Act." N.J.S.A. 34:13A-1 et seq. That Act provided in section 7 (N.J.S.A. 34:13A-5.3) for good faith negotiation with respect to grievances and "terms and conditions" of employment. The Legislature did not define the phrase terms and conditions as used in section 7 nor did it specify what subjects were negotiable and what subjects were outside the sphere of negotiation. It did, however, in section 10, state that no provision in the Act shall "annul or modify any statute or statutes of this State." N.J.S.A. 34:13A-8.1. In the light of all of the foregoing it became our clear judicial responsibility to give continuing effect to legislative provisions such as those embodied in the Education Law (Title 18A) without, however, frustrating the goals or terms of the Employer-Employee Relations Act. We concluded that, pending further clarifying legislation, case by case determinations as to what was mandatorily negotiable would be required; in Dunellen we held that the consolidation of social studies and English department chairmanships into a newly created humanities chairmanship was predominantly a matter of educational policy which had only incidental effect on the terms and conditions of employment contemplated by the Employer-Employee Relations Act and was, accordingly, not mandatorily negotiable. 64 N.J. at 29.
In Burlington, supra, 64 N.J. 10, we held that the college calendar was not a proper subject of mandatory negotiation. In Dungan, supra, 64 N.J. 338, we held that rules on faculty tenure policies for State colleges did not have to be negotiated. However, in Englewood, supra, 64 N.J. 1, we held that issues which bore directly on the hours and compensation of the individual grievant teachers were proper subjects of mandatory negotiation. Within the cited cases, particularly Englewood, the Board's 1973 guidelines, insofar as they embodied additional restrictions on outside employment beyond those which were preexistent, should have been negotiated. As the Appellate Division put it, they directly affected *77 the work and welfare of the college employees, related to the terms and conditions of their employment within the contemplation of the statute, and did not affect any major educational policy. Although the Appellate Division properly found error in the Board's unilateral action it should not have stricken all of the guidelines; it would have been entirely sufficient to strike, pending negotiation, sections (c), (d) and (e) of N.J.A.C. 9:2-10.2, and to that end the judgment entered in the Appellate Division is modified.
In the petition for certification the Board referred to the Appellate Division's formal expression as a "cursory two-page opinion" and suggested that there should be further elaboration of the principles set forth in Dunellen (64 N.J. 17) and further review of the interrelationship between the Conflicts of Interest Law (N.J.S.A. 52:13D-12 et seq.) and the Employer-Employee Relations Act (N.J.S.A. 34:13A-1 et seq.). Whatever merit the suggestion may have had originally has undoubtedly been dissipated by very recent legislative action. On October 21, 1974 the Legislature passed and the Governor signed Senate No. 1087 which materially amends and supplements the New Jersey Employer-Employee Relations Act. L. 1974, c. 123. See also Assembly No. 814; L. 1974, c. 124. In due time the courts will undoubtedly be called upon to construe this new legislation and pass on any constitutional issues which may be raised with respect thereto. In the meantime it would be pointless to elaborate here on Dunellen (64 N.J. 17) or on the principles which it embraced; nor would it serve any purpose to review further the interrelationship between the terms of the Conflicts of Interest Law and the terms of the Employer-Employee Relations Act prior to its recent amendment and supplementation in L. 1974, c. 123. Needless to say, in this proceeding we have not been called upon to, and at this time do not, express any opinions whatever with respect to the terms and effects of L. 1974, c. 123.
Modified.
*78 For modification  Chief Justice HUGHES, Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD, and Judge KOLOVSKY  7.
Opposed  None.