168 N.J. Super. 497 (1979)
403 A.2d 916
BOARD OF EDUCATION, TOWNSHIP OF WYCKOFF, PLAINTIFF-APPELLANT,
v.
WYCKOFF EDUCATION ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 1, 1979.
Decided May 21, 1979.
*498 Before Judges LYNCH, CRANE and HORN.
Messrs. Sullivan & Sullivan, attorneys for appellant (Mr. Mark G. Sullivan on the briefs).
Messrs. Goldberg & Simon, attorneys for respondent (Mr. Theodore M. Simon, of counsel; Mr. Louis P. Bucceri on the brief).
The opinion of the court was delivered by LYNCH, P.J.A.D. (retired and temporarily assigned).
The Board of Education, Township of Wyckoff (Board) appeals from an order confirming an arbitration award in favor of Wyckoff Education Association (Association) and dismissing the board's complaint which sought vacation of said award.
*499 This case involves the nonrenewal of contracts of two nontenured teachers.[1] When the board decided not to renew those contracts the teachers filed a grievance, claiming that the board's actions violated the policies and procedures regarding teacher evaluation and, specifically, Article XVI of the collective bargaining agreement between the Association and the board concerning "Evaluation Process." The grievance ultimately came before an arbitrator who decided in favor of the teachers.
The arbitrator held: (1) as the Association conceded, it was the board's prerogative not to renew the grievant's contracts; (2) however, since the agreement between the parties provides a certain method of evaluation of probationary teachers, that procedure must be literally followed, and (3) since the board, after conducting its evaluations of the various nontenured teachers, provided that they should be "ranked" (i.e., in the order in which the school administrators deemed them to be least effective), this was a deviation from the evaluation procedure as outlined in Article XVI of the labor contract and constituted a violation thereof. The arbitrator directed that the teachers received the yearly amount of wages they would have received if they had been reemployed, less any money earned by way of mitigation.
We reverse. We conclude that to award the nontenured teachers the amount of wages they would have received if their contracts had been renewed, while at the same time recognizing that the board had the right not to renew them, amounts to compelling the board to pay damages for doing what it had the legal right to do. See Union Cty. Bd. of Ed. v. Union Cty. Teachers Ass'n, 145 N.J. Super. 435 (App. Div. 1976), certif. den. 74 N.J. 248 (1977).
We recognize that the Association contends that it did not grieve the right of the board not to renew the contracts[2] *500 but rather did grieve the alleged violation of the "Evaluation Process" set forth in Article XVI of the contract. We conceive that to be a distinction without a difference. To seek damages for nonreappointment  for whatever reason except denial of due process  must nevertheless be based on a claim to a right of reappointment. See Winston v. South Plainfield Bd. of Ed., 125 N.J. Super. 131, 143 (App. Div. 1973), aff'd 64 N.J. 582 (1974).
Moreover, Article IV, § 1 of the contract, concerning the "Grievance Procedure", expressly provides so far as pertinent:
The non-reappointment of a pretenure teacher is not subject to this grievance procedure. This does not preclude an appeal regarding due process in the reappointment procedure. [Emphasis supplied]
Thus it is that only denial of due process in the reappointment procedure is grievable. But the Association agrees in its brief:
In this contract the evaluation procedure is precisely designed to provide "due process" (i.e. notice and the opportunity to be heard).
There was no denial of due process here. Each of the four teachers was notified in writing that the board had determined not to reappoint them for the 1976-77 school year. As the arbitrator said in his decision: "The four teachers requested a hearing before the Board after they were told the reasons for their nonrenewal in the latter part of May. The hearing was held on June 10, 1976 after which the Board rehired two of the four." Thus the board followed the procedure outlined by statute (N.J.S.A. 18A:27-3.1, 3.2 and 3.3) and regulation (N.J.A.C. 6:3-1.20) and even allowed the teachers to be *501 heard by the board in order to convince the members of the board to offer reemployment. In fact, two of the four teachers were reappointed. See Donaldson v. North Wildwood Bd. of Ed., 65 N.J. 236 (1974).
The Association contends that the fact that the board "ranked" the nontenured teachers was in excess of its power and violated the contract. We disagree. No statute or regulation dictates the criteria the board may use in its evaluation process (as distinguished from procedure). The arbitrator's reasoning in his finding that "ranking" was violative of the contract was expressed in his opinion as follows:
Simply stated, under the agreed upon [contract] evaluation procedure, the Board says to the probationary teacher: "Do a fine job and we'll keep you on." Under the ranking system, the Board says something else to the probationary teacher. "Do a fine job but that may not be enough; because if everybody else does a better job, you're in trouble."
We submit that such reasoning would deprive the board of that power which everyone concedes is a management prerogative, namely, the right not to renew the contracts of nontenured teachers. This is so because if the first of the arbitrator's interpretations is to be followed (i.e. "Do a fine job, and we'll keep you on"), it amounts to a binding obligation on the part of the board to renew the contracts of all nontenured teachers who do a "good job." No such obligation exists. Further, since the board must adopt some criteria upon which to base its decision, ranking seems to be a perfectly logical one. In North Bergen Tp. Bd. of Ed. v. North Bergen Fed. Teachers, 141 N.J. Super. 97 (App. Div. 1976), it was held that the issue of the school board's right to select candidates for promotion from either within or without the local system involves major educational policy and as such must be considered managerial prerogative. So here as to the criteria the board shall use in determining whether or not to renew the contracts of nontenured teachers. This accords with the board's duty that the children of the *502 district shall receive a "thorough and efficient education." Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 156 (1978). To ascribe to "ranking" an invidious connotation seems to us to be flying to the realm of fantasy. If the board had not expressly established ranking, what would it, in reality, do in reaching the decision to renew or not to renew? Obviously it would subjectively "rank" the teachers under consideration to determine which to renew and which not to renew. To express such a process is no less logical, natural or desirable.
It is clear to us that the arbitrator in substituting his concept of criteria for evaluation for that of the board intruded upon the exclusive managerial prerogative of the board. See Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17, 25-26 (1973); In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12, 21 (App. Div. 1977); Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, 79 N.J. 311 (1979); In the Matter of Maywood Bd. of Ed., 168 N.J. Super. 45 (1979). Thus, the award was the result of undue means. N.J.S.A. 2A:24-8. Held v. Comfort Bus Lines, 136 N.J.L. 640, 641-642 (Sup. Ct. 1948); cf. Local Union 560 v. Eazor Express, Inc., 95 N.J. Super. 219, 227-228 (App. Div. 1967).
We therefore reverse the confirmation of the arbitrator's award and order that it be vacated.
NOTES
[1] Initially four nontenured teachers' contracts were not renewed. However, the board rehired two of the nontenured teachers.
[2] However, its grievance, as originally filed with the board did ask for reinstatement of the teachers. But, before the arbitrator the Association argued violation of the "Evaluation Process" and asked for damages.