177 N.J. Super. 479 (1981)
427 A.2d 80
BETHLEHEM TOWNSHIP BOARD OF EDUCATION, PETITIONER-RESPONDENT,
v.
BETHLEHEM TOWNSHIP EDUCATION ASSOCIATION, RESPONDENT-APPELLANT. LINDEN BOARD OF EDUCATION, PETITIONER-APPELLANT,
v.
LINDEN EDUCATION ASSOCIATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1981.
Decided February 19, 1981.
*481 Before Judges MATTHEWS, MORTON I. GREENBERG and ASHBEY.
Sanford R. Oxfeld argued the cause for appellant Bethlehem Township Education Association and for respondent Linden Education Association (Rothbard, Harris & Oxfeld, attorneys).
John T. Barbour argued the cause for respondent Bethlehem Township Board of Education and for appellant Linden Board of Education (Barbour & Costa, attorneys).
Christine D. Weger argued the cause for the New Jersey School Boards Association, amicus curiae, (David W. Carroll, General Counsel, on the brief).
*482 Sidney H. Lehmann, General Counsel, argued the cause for the Public Employment Relations Commission (Don Horowitz, Deputy General Counsel, on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
After oral argument, we consolidate these appeals since they involve common questions of law.
N.J.A.C. 6:3-1.21, adopted by the New Jersey State Board of Education on July 8, 1978, requires local boards of education to adopt policies and procedures for the evaluation of tenured teaching staff members. During the 1978-79 school year disputes arose between the Linden Board of Education and the Linden Education Association, and between the Bethlehem Township Board of Education and the Bethlehem Township Education Association, concerning the scope of negotiations in the area of tenured teacher evaluation. Accordingly, both local boards filed scope-of-negotiation petitions with the Public Employment Relations Commission (PERC). The New Jersey School Boards Association (NJSBA) was permitted to participate in the proceedings as an amicus curiae.
Both cases were argued before PERC, which issued decisions in In the Matter of Linden Board of Education and Linden Education Association, PERC No. 80-6, ___ NJPER ___ (1979), and In the Matter of Bethlehem Township Board of Education, PERC No. 80-5, ___ NJPER ___ (1979), on July 5, 1979. PERC held in both cases that negotiations regarding procedures for the evaluation of tenured teachers are mandatorily negotiable except to the extent that those procedures are established by specific provisions of N.J.A.C. 6:3-1.21. In its Bethlehem decision PERC examined the negotiability of 13 specific proposals of the Bethlehem Township Education Association and ordered the Bethlehem Township Board of Education to negotiate two of the proposals.
*483 The associations contend that regulations of the State Board of Education concerning terms and conditions of employment are not binding upon local boards and therefore do not preempt collective negotiation. Specifically, the associations argue that the holding in State v. State Supervisory Employees Ass'n, 78 N.J. 54, 80 (1978), that "specific regulations which set particular terms and conditions of employment ... for public employees may not be contravened by negotiated agreement," applies only to Civil Service Commission regulations and that the State Board's regulations do not preempt collective negotiation concerning terms and conditions of employment.
PERC was not persuaded by the associations' argument that rules of the State Board are not binding on local boards in the same way that regulations of the Civil Service Commission are binding on the State, and found that the State Supervisory Employees case was not distinguishable on that ground:
Our reading of the Supreme Court's discussion of the effect of specific statutes and administrative regulations of State agencies seems just as applicable, if not more so, to the actions of local boards of education as it does to the actions of the State. See 78 N.J. at 79-83 ... The State Board of Education has been given broad authority to promulgate regulations interpreting and implementing the school laws which are binding on local boards of education. See e.g. N.J.S.A. 18A:4-15; N.J.S.A. 18A:7A-6. Therefore, the adoption by it of specific regulations establishing terms and conditions of employment prevents a local board from negotiating on a proposal which would violate such a specific regulation in the same manner that a regulation of the Civil Service Commission preempts negotiation between the State and the employee organizations representing State employees.
The Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., authorizes collective negotiation only with respect to the terms and conditions of public employment. N.J.S.A. 34:13A-5.3; State, above, 78 N.J. at 66.
... negotiable terms and conditions of employment are those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. [Id. at 67; citations omitted]
See, also, Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 7 (1973); Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. *484 17, 25 (1973). The court in State considered "the question of the permissible scope of collective negotiations concerning the terms and conditions of public employment in this State." State, above, 78 N.J. at 60. At issue in State was the correctness of two scope-of-negotiations determinations rendered by PERC. The State had contended in both disputes that matters sought to be negotiated by the public employees' unions involved managerial policies controlled by the Civil Service statutes. The disputes before PERC had centered around the interpretation to be accorded to the amendment to N.J.S.A. 34:13A-8.1 which in the original act, L. 1968, c. 303, "effectively limited the scope of collective negotiations by clearly stating that no provision of the Act could `annul or modify any statute or statutes of this State.'" 78 N.J. at 61. The 1974 amendment to the section, L. 1974, c. 123, § 6, changed the wording of N.J.S.A. 34:13A-8.1 to its present form, "nor shall any provision hereof annul or modify any pension statute or statutes of this State." PERC had found that the change in N.J.S.A. 34:13A-8.1 meant that general statutes were "not to be read as shields to the employer's obligation to negotiate regarding terms and conditions of employment but specific statutes governing terms and conditions of employment cannot be abrogated by collective negotiations." 78 N.J. at 62, citing In re Local 195, IFPTE and Local 518, SEIU and State of New Jersey, PERC No. 77-57, 3 NJPER 118, 121 (1977). On appeal, the court was called upon to determine whether the 1974 amendment to N.J.S.A. 34:13A-8.1, L. 1974, c. 123, § 6, signaled an intent by the Legislature to permit negotiation and agreement to supplant Civil Service statutes and regulations. 78 N.J. at 60. The court found that the Legislature intended the 1974 amendment of N.J.S.A 34:13A-8.1 to require collective negotiation concerning nonregulated terms and conditions of public employment, but that "specific statutes or regulations which expressly set particular terms and conditions of employment... for public employees may not be contravened by negotiated agreement." 78 N.J. at 80-81.
*485 The associations take the position that the holding in State is limited to Civil Service Commission regulations because "the Supreme Court specifically referred to the Civil Service Commission" in its decision. The associations also attempt to distinguish State on the basis that "the Supreme Court found the Civil Service Commission to be an independent agency regulating terms of public employment and not subject to the dictates of the Executive Branch of the State," whereas the state board, a department of the Executive Branch, N.J.S.A. 18A:4-1, does not have such independence. We find neither argument to be persuasive. We believe that State should be construed to extend to all statutes and regulations dealing with public employment. The court itself framed the issue in State as "the permissible scope of collective negotiations concerning the terms and conditions of public employment in this State." 78 N.J. at 60. Because the issue was dealt with in the context of Civil Service statutes and regulations does not so limit the applicability of the holding. The court's interpretation of the 1974 amendment to N.J.S.A. 34:13A-8.1 clearly applies wherever any statute or regulation is alleged to preempt collective negotiation; additionally, contrary to the associations' position, the court did not distinguish the Civil Service Commission as an agency independent from the Executive Branch.
The associations also argue that since PERC has primary jurisdiction to make a determination as to whether a matter in dispute is within the scope of collective negotiations, N.J.S.A. 34:13A-5.4(d), the State Board should not be allowed to remove an area from collective negotiations by promulgating regulations setting terms and conditions of employment. This argument apparently is based on the fact that the regulation at issue here, N.J.A.C., 6:3-1.21, dealing with evaluation policies and procedures for tenured teaching staff members, was adopted subsequent to PERC determinations that evaluation procedures are mandatorily negotiable.
N.J.S.A. 34:13A-5.4(d) provides:

*486 The commission shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations. The commission shall serve the parties with its findings of fact and conclusions of law. Any determination made by the commission pursuant to this subsection may be appealed to the Appellate Division of the Superior Court.
This provision does not give PERC the authority to set the scope of collective negotiations. Rather, that task is left to statute and regulation. The Supreme Court has refused to interpret the amended act to allow collective negotiations to contravene "specific statutes and regulations which expressly set particular terms and conditions of employment." State, above, 78 N.J. at 79-80. Therefore, a regulation adopted pursuant to statutory authority which conflicts with a prior PERC determination is not invalid. Moreover, to construe N.J.S.A. 34:13A-5.4(d) to give PERC the authority to set the scope of collective negotiations would limit agencies' statutory rulemaking authority in any area which PERC has determined to be within the scope of collective negotiation. Such a construction is not favored, since it is our duty to harmonize legislative enactments insofar as may be possible in order that each may be fully effective. State v. Federanko, 26 N.J. 119, 129 (1958); North Bergen Tp. v. Lord, 131 N.J. Super. 280, 282 (App. Div. 1974).
In sum, the holding in State v. State Supervisory Employees Association applies to regulations of the State Board. Thus, if N.J.A.C. 6:3-1.21 meets the criteria set out in State, then the regulation preempts collective negotiation in the are of evaluation procedures for tenured teaching staff members.
PERC applied the analysis of the State case to N.J.A.C. 6:3-1.21 and found that the regulation does not totally preempt negotiation in the area of procedures for tenured teacher valuation. PERC held, therefore, that "As long as a proposal does not contravene any of the specific provisions of N.J.A.C. 6:3-1.21 and concerns a term and condition of employment, it may be negotiated." PERC rejected the local boards' argument that N.J.A.C. 6:3-1.21 is so comprehensive as to set all terms and conditions of employment in the area, noting that if such were *487 the case, it would not be necessary for a local board to develop the details of the program. PERC also rejected the argument that N.J.A.C. 6:3-1.21(c), which states that policies and procedures for the implementation of the regulation shall be developed "in consultation with tenured teaching staff members," precludes negotiations. PERC found that this requirement is compatible with collective negotiations, since it does not preclude negotiation regarding procedures not specifically established in the rules but does require the local board to consult with teaching staff members concerning policies and procedures which are not negotiable. As for the history of the process leading to the adoption of the regulation, PERC found that the State Board's intent to preclude negotiation in the area covered by the regulation was not relevant. PERC also found that the "in consultation with" language in N.J.A.C. 6:3-1.21(c) does not set a term and condition of employment because:
The Supreme Court's analysis in State Supervisory Employees Association relies upon the fact that the existence of a specific regulation removes the item from the employer's authority, thus making it powerless to agree to the terms proposed by an employee organization. None of this would apply to an administrative regulation which purported to place in individual public employers the unilateral authority to establish a term and condition of employment and, in effect, only restricts the employees' statutory right to negotiate such an item.
The scope of appellate review of PERC determinations is narrow. See In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12, 22-24 (App. Div. 1977). So long as PERC's determination regarding a scope-of-negotiations dispute adheres to the guidelines set out in Dunellen, above, 64 N.J. at 25, and State, above, 78 N.J. at 67, an appellate court "should give PERC the same deference which administrative agencies are normally accorded in their area of expertise. See N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-563 (1978)." State, above, 78 N.J. at 84. We find that PERC's determination in these cases adheres to the Dunellen and State guidelines and therefore should be upheld.
The local boards argue that the procedural aspects of tenured teacher evaluations are "so intimately bound up within [sic] a *488 local board of education's ability to provide a thorough and efficient education that no aspect [of the teacher evaluation process] can be subject to [collective] negotiations." This issue was not raised below.
In any event, there is no authority for the local boards' position that procedural aspects of tenured teacher evaluations are not mandatorily negotiable. Rather, this court has distinguished evaluation criteria and evaluation procedures and has held that the former involves matters of educational policy while the latter concerns the work and welfare of the teachers, does not impinge on management's educational responsibilities, and therefore is a negotiable term and condition of employment. Cf. In re Maywood Bd. of Ed., 168 N.J. Super. 45, 52-53 (App. Div. 1979), certif. den. 81 N.J. 292 (1979) (procedural matters dealing with teachers' reemployment rights are not negotiable because such matters are comprehensively regulated by N.J.S.A. 18A:28-12); Wyckoff Tp. Bd. of Ed. v. Wyckoff Ed. Ass'n, 168 N.J. Super. 497 (App. Div. 1979), certif. den. 81 N.J. 349 (1979) (the local board's practice of "ranking" nontenured teachers and the criteria used to determine whether or not to renew their contracts involves educational policy and is a management prerogative); In re Teaneck Bd. of Ed., 161 N.J. Super. 75 (App. Div. 1978) (negotiation of evaluative criteria is against public policy); In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12 (App. Div. 1977) (teachers' proposal that in filling vacancies consideration be given to teacher's area of competence, quality of teaching performance, attendance record and length of service concerned qualifications for the vacancy, had little, if any, bearing on procedures to be used in filling the vacancy, and thus involved a non-negotiable matter of educational policy); North Bergen Tp. Bd. of Ed. v. North Bergen Fed. Teachers, 141 N.J. Super. 97 (App. Div. 1976) (promotional criteria must be left to the local board as a matter of educational policy but procedures by which promotional vacancies are filled should be negotiated).
"[S]pecific statutes or regulations which expressly set particular terms and conditions of employment ... may not be contravened *489 by negotiated agreement ... negotiation over matters so set by statutes or regulations is not permissible." State, above, 78 N.J. at 80.
We use the word "set" to refer to statutory or regulatory provisions which speak in the imperative and leave nothing to the discretion of the public employer. All such statutes and regulations which are applicable to the employees who comprise a particular unit are effectively incorporated by reference as terms of any collective agreement covering that unit. [Id. at 80; footnote omitted]
On the other hand,
... statutes or regulations concerning terms and conditions of public employment which do not speak in the imperative, but rather permit a public employer to exercise a certain measure of discretion, have only a limited preemptive effect on collective negotiation and agreement. Thus, where a statute or regulation mandates a minimum level of rights or benefits for public employees but does not bar the public employer from choosing to afford them greater protection, proposals by the employees to obtain that greater protection in a negotiated agreement are mandatorily negotiable. A contractual provision affording the employees rights or benefits in excess of that required by statute or regulation is valid and enforceable. However, where a statute or regulation sets a maximum level of rights or benefits for employees on a particular term and condition of employment, no proposal to affect that maximum is negotiable nor would any contractual provision purporting to do so be enforceable. Where a statute sets both a maximum and a minimum level of employee rights or benefits, mandatory negotiation is required concerning any proposal for a level of protection fitting between and including such maximum and minimum. [Id. at 81-82]
N.J.A.C. 6:3-1.21 permits the public employer, the local board, to exercise a certain measure of discretion in adopting procedures for the evaluation of tenured teachers, since subsection (c) expressly provides that its list of procedures which "shall be developed" is not exclusive. N.J.A.C. 6:3-1.21(c). The regulation, therefore, has only a limited preemptive effect on collective negotiation regarding procedures for the evaluation of tenured teachers, and mandatory negotiation is required concerning any proposal which does not contravene any specific provision of N.J.A.C. 6:3-1.21 and concerns a term and condition of employment. See State, above, 78 N.J. at 81-82. Furthermore, the consultation requirement of the regulation, N.J.A.C. 6:3-1.21(c), should not be construed to negate the public employee's statutory right under N.J.S.A. 34:13A-5.3 to collective negotiation concerning terms and conditions of employment. See State v. *490 Federanko, above, 26 N.J. at 129; North Bergen Tp. v. Lord, above, 131 N.J. Super. at 282.
Only the amicus curiae disputes PERC's findings regarding the specific proposals of the Bethlehem Township Education Association, and then only as to the two proposals (B.1.C. and B.4.A.) which PERC ruled were subject to negotiation. An amicus curiae, however, must accept the case before the court with the issues established by the parties, and cannot be allowed to raise an issue not raised by them. In re Byram Tp. Bd. of Ed., above, 152 N.J. Super. at 18. In any event, we find that PERC's ruling regarding proposal B.4.A., which the amicus curiae contends is not a term and condition of employment, should not be disturbed.
Proposal B.4.A. provides:
Teachers shall be evaluated only by persons certificated by the New Jersey State Board of Examiners to supervise instruction. By September 1 of each school year, each teacher shall be given the name of the person who will evaluate his/her classroom performance.
PERC found that the first part of the proposal is required by N.J.A.C. 6:3-1.21(h)(1) and thus has been preempted and is not negotiable. PERC also found that the second part of the proposal, which requires that teachers be notified by September 1 of each year as to who will evaluate his or her classroom performance, is a negotiable term and condition of employment. This finding comports with the guideline set out in State, above, 78 N.J. at 67. The person who is to evaluate the teacher has an appreciable effect upon that teacher's welfare. Notice of the identity of the evaluator would not, we believe, appear to interfere with the local board's managerial responsibility to evaluate the teacher's qualifications. Cf. Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 156 (1978) (teacher transfers and reassignment decisions relate to the local board's "managerial duty to deploy personnel in the manner which it considers most likely to promote the overall goal of providing all students with a thorough and efficient education [and thus] ... the issue of teacher transfers is one on which negotiated agreement would significantly interfere with a public *491 employer's discharge of inherent managerial responsibilities.")
Proposal B.1.C. provides:
Classroom visitations/observations shall not occur on the same day, nor shall any observation occur prior to the previous evaluation conference. In no case should any observation occur within ten (10) school days of the previous evaluation.
The amicus contends that B.1.C. also is not a term and condition of employment and thus is not negotiable. PERC found:
Subsection B includes 11 points, not all of which are in dispute, which the Association labels "Procedure". B.1.B. and B.1.C. relate, according to the Association's proposal, to the frequency of evaluations. However, the former actually provides for a minimum notice of five work days prior to a classroom visitation and the latter provides that visitations and observations shall not occur on the same day, that observations shall not occur prior to the previous evaluation conference, and that no observation should occur within ten school days of the previous evaluation.
Applying the balancing test enunciated by the Court in Dunellen and State Supervisory Employees Ass'n., we conclude that B.1.B. is not mandatorily negotiable but that B.1.C. is a required subject for collective negotiations. Both proposals intimately affect teachers' working conditions, but we find that B.1.B., unlike B.1.C., significantly interferes with the exercise of managerial prerogatives in the determination of governmental policy; i.e., the manner by which evaluations are conducted. B.1.B. transcends the level of a procedural notice provision and directly affects the substantive aspects of the evaluation process.
We agree, and affirm.