181 N.J. Super. 179 (1981)
436 A.2d 1152
COUNCIL OF NEW JERSEY STATE COLLEGE LOCALS, NJSFT-AFT/AFL-CIO, APPELLANT,
v.
STATE BOARD OF HIGHER EDUCATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1981.
Decided October 14, 1981.
*181 Before Judges MATTHEWS, PRESSLER and PETRELLA.
William A. Cambria argued the cause for appellant (Sauer, Boyle, Dwyer, Canellis & Cambria, attorneys).
Robert A. Fagella, Deputy Attorney General, argued the cause for respondent State Board of Higher Education (James J. Zazzali, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
This appeal involves the validity of regulations enacted by the New Jersey State Board of Higher Education (hereafter Board) governing uniform procedures for reductions in the work force at the state colleges which may be necessary because of fiscal exigency.
The regulations adopted by respondent Board, we are informed, constitute the first comprehensive and uniform policy applicable at the eight state colleges for reducing the number of employees, determining appropriate layoff units and establishing reemployment rights at any of the institutions in the event of a fiscal emergency. We are advised by the Attorney General that the need for such a policy, addressed to the educational and academic needs of the entire state college community, has become pressing in recent years due to the escalating operating costs of the institutions. Because a state of fiscal exigency does not presently exist at any of the state colleges, the Board considered this an appropriate time to plan for such an eventuality.
*182 The regulations enacted by the Board represent a comprehensive attempt "to preserve academic integrity of the institutions while respecting the rights of the individual [employees] involved" in the event of a fiscal exigency at any of the state colleges. This is accomplished by establishing a process for determining and declaring a fiscal emergency and preparing and implementing a plan for meeting the crisis, N.J.A.C. 9:2-3.1, -3.2; by offering a framework to guide the Board in deciding how to reduce expenses while still maintaining the academic integrity of the college, N.J.A.C. 9:2-3.5; by requiring consideration of alternatives other than layoffs, N.J.A.C. 9:2-3.2; by demanding that any layoffs which do result "be based on academic or administrative considerations" and that programs and functions of major instructional or administrative importance be protected, N.J.A.C. 9:2-3.5; by requiring consideration of possible impacts on affirmative action, N.J.A.C. 9:2-3.4; by calling for consultation with the college community before formulating any plans to allow input from those who may be affected, N.J.A.C. 9:2-3.3 by providing notice to the bargaining unit's representative and fulfillment of agreed-upon contractual obligations, N.J.A.C. 9:2-3.5, and by requiring notice of staff reductions and efforts directed at the reemployment of those who are laid off, N.J.A.C. 9:2-3.6, -3.11. These procedures for declaring a fiscal exigency and reducing the work force have not been invoked by any of the state colleges.

I
The Council first argues that the regulations in question are materially intertwined with terms and conditions of employment and should have been negotiated prior to adoption. In support of this contention the Council presents various sub-arguments.

A
Council contends, first, that the preemption doctrine as set forth in State v. State Supervisory Employees Ass'n, 78 N.J. *183 54 (1978), is inapplicable to the present proceedings because the Department of Higher Education is an employer of the employees affected by the regulations. The Council particularly emphasizes that the Department has acted as an employer in its relationship with it in the areas of negotiation and grievance processing. It draws our attention to N.J.A.C. 9:2-5.5 and submits that the Board itself has determined that the Department serves an employer function. N.J.A.C. 9:2-5.5, in applicable part, provides:
(a) Employer. For purposes of collective negotiation on all economic issues and all issues determined by the employer to be applicable to all public institutions of higher education, the employer's representative is a Negotiating Committee comprised of representatives of the institution or institutions, the Department of Higher Education, and the office of the State Negotiator. On all other issues the employer's representative is the governing board of the public institution of higher education.
The Legislature has set up a comprehensive scheme giving the Board of Higher Education broad authority over the system of public higher education in this State. Thus, N.J.S.A. 18A:3-13 provides:
It shall be the duty of the board of higher education to advance long-range planning for the system of higher education as a whole in the state; establish general policy for the governance of the separate institutions; coordinate the activities of the individual institutions which, taken together, make up the system of higher education in New Jersey; and maintain general financial oversight of the state system of higher education. The board shall not administer the individual institutions of higher education, its own administration being specifically reserved unto each of such institutions.
Within the limitations imposed by general legislation applicable to all agencies of the state and the provisions of this chapter, the board is hereby granted exclusive jurisdiction over higher education in this state and its constituent parts and the requisite power to do all things necessary and proper to accomplish the aims and carry out the duties provided by law.
Also, N.J.S.A. 18A:3-14 provides in part that the Board of Higher Education shall:
........
h. Set policy on salary and fringe benefits, and establish general personnel policies for the public institutions of higher education; ....
In addition, N.J.S.A. 18A:3-15 states:

*184 The board of higher education shall adopt bylaws and may make and enforce, alter and repeal rules for its own government and for implementing and carrying out this law.
Further, N.J.S.A. 18A:3-16 provides:
The board of higher education shall have all powers, in addition to those specifically provided by law, requisite to the performance of its duties.
Preliminarily, we note that under the New Jersey Employer-Employee Relations Act, L. 1968, c. 303, § 2, N.J.S.A. 34:13A-1 et seq., public employers and employees are to negotiate with respect to grievances and terms and conditions of employment. It is well settled, however, that the right of public employees to negotiate conditions of employment with public employers is not absolute. See Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978); State v. State Supervisory Employees Ass'n, supra. Recently, this court in Local 195, IFPTE, AFL-CIO v. State, 176 N.J. Super. 85 (App.Div. 1980), after citing the above two cases, observed:
... [T]here are but two categories into which a matter sought to be negotiated may fall, a mandatorily negotiable term and condition of employment or a nonnegotiable matter of managerial prerogative. But even an item that is a term and condition of employment will not be negotiable if preempted by specific statute or regulation. [at 90 (emphasis supplied)]
In fact, the Council here recognizes that under "normal circumstances" and as set forth in State v. State Supervisory Employees Ass'n, negotiations of terms and conditions of employment are preempted by adoption of administrative regulations controlling the identical subject matter.
The Council, however, maintains that the present circumstances are unique because the Department of Higher Education is an employer of the employees affected by the regulations. Although at times the Board apparently assumes a limited employer role,[1] in the instant circumstances the Board is acting in its statutorily delegated rule-making capacity. This role, as pointed out by the State, is not unlike the Civil Service Commission's supervisory role which was deemed appropriate in State Supervisory Employees Ass'n, and the State Board of Education's *185 exercise of its regulatory authority over local school districts in Bethlehem Bd. of Ed. v. Bethlehem Ed. Ass'n, 177 N.J. Super. 479 (App.Div. 1981).

B.
The Council next contends that the Board had an obligation to negotiate with respect to the regulations in question because those regulations affect terms and conditions of employment. In support of its position, the Council relies almost exclusively on Ass'n of State Col. Fac. v. N.J. Bd. of Ed., 66 N.J. 72 (1974).
In Ass'n of State Col. Fac., guidelines adopted by the Board of Higher Education with respect to outside employment were challenged. The Supreme Court upheld this court's decision to strike some of the questioned guidelines, pending negotiation, as "they directly affected the work and welfare of the college employees, related to the terms and conditions of their employment within the contemplation of the statute, and did not affect any major educational policy." 66 N.J. at 76-77. Contrary to what the Council urges, Ass'n of State Col. Fac. v. N.J. Bd. of Ed., is not a wide-sweeping decision. Rather, it appears that the court intended to confine the decision there to the particular facts before it.
On the other hand, State Supervisory Employees Ass'n is a more comprehensive opinion which specifically dealt with the issue of the preclusive effect of specific regulations upon collective negotiations. Most recently, this court, in Bethlehem Bd. of Ed., reaffirmed the wide-reaching effect of State Supervisory Employees Ass'n. There, we rejected the argument that the holding in State Supervisory Employees was to be confined to Civil Service Commission regulations. In language germane to this appeal we observed:
We believe that State should be construed to extend to all statutes and regulations dealing with public employment. The court itself framed the issue in State as "the permissible scope of collective negotiations concerning the terms and conditions of public employment in this State." 78 N.J. at 60. Because the issue was dealt with in the context of Civil Service statutes and regulations does *186 not so limit the applicability of the holding. The court's interpretation of the 1974 amendment to N.J.S.A. 34:13A-8.1 clearly applies wherever any statute or regulation is alleged to preempt collective negotiation; additionally, contrary to the associations' position, the court did not distinguish the Civil Service Commission as an agency independent from the Executive Branch. [177 N.J. Super. at 485]
In In re Maywood Bd. of Ed., 168 N.J. Super. 45 (App.Div. 1979), certif. den. 81 N.J. 292 (1979), the Maywood Education Association challenged, among other things, PERC's holding that the Maywood Board of Education's decision to dismiss a tenured librarian was lawful and not negotiable. The Association argued that since the dismissed teacher had tenure, she also had reemployment rights which should have been mandatorily negotiable. This court rejected that position and stated:
The test for determining whether the adoption of a specific statute or regulation sets a term and condition of employment, thereby preempting negotiation, depends on whether the statute[s] or regulation[s] "speak in the imperative ... [or] permit a public employer to exercise a certain measure of discretion." State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 81. The court defined mandatory or imperative statutes as "those enactments which set up a particular scheme which "shall" [sic] be handled as directed." Id. at 82, n. 7. Where a statute or regulation sets a minimum level of rights, negotiation to afford an employee a greater protection is allowable. Where a statute sets down both a minimum and a maximum right, mandatory negotiation is required for a level of protection fitting between. However, where a statute sets a maximum level of rights, "no proposal to affect that maximum is negotiable nor would any contractual provision purporting to do so be enforceable." Id. at 81-82.
In the case at bar, N.J.S.A. 18A:28-12 sets forth a maximum level of rights. It mandates that a RIFed tenured teacher shall be reemployed pursuant to seniority where a vacancy occurs in the future. Pursuant to statute, the Commissioner of Education has established the standards for the determination of seniority for reemployment lists. [168 N.J. Super. at 53-54]
We conclude that the principles set forth in State Supervisory Employees govern the present controversy.

C
The Council next argues that the regulations as promulgated involve procedural aspects of layoffs and reductions, and, accordingly, are clearly terms and conditions of employment, requiring negotiations.
In State Supervisory Employees the court stated:

*187 ... [N]egotiable terms and conditions of employment are those matters when intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. [78 N.J. at 67]
The Council argues that the procedural aspects of layoffs and reductions in force should be negotiable since such matters are of "substantial concern" to the employees who would be affected by such regulations. Preliminarily, it should be recognized that:
Logically pursued, these general principles  managerial prerogatives and terms and conditions of employment  lead to inevitable conflict. Almost every decision of the public employer concerning its employees impacts upon or affects terms and conditions of employment to some extent. While most decisions made by a public employer involve some managerial function, ending the inquiry at that point would all but eliminate the legislated authority of the union representative to negotiate with respect to "terms and conditions of employment." N.J.S.A. 34:13A-5.3. Conversely to permit negotiations and bargaining whenever a term and condition is implicated would emasculate managerial prerogatives. [Woodstown-Pilesgrove Reg'l School Dist. Bd. of Ed. v. Woodstown-Pilesgrove Reg'l Ed. Ass'n, 81 N.J. 582, 589 (1980)]
We are inclined to agree with the position advanced by the Board that the decision to reduce work staffs at the various colleges in the event of fiscal exigency requires sensitive academic judgments which are clearly managerial in nature. Such decisions entail considerations which are at the very heart of education policy and cannot be shared with groups representing private interest.
In Maywood Bd. of Ed., we determined that the decision to reduce teacher personnel, whether tenured or nontenured, was based on a managerial prerogative and, accordingly, not negotiable. We also held that the "impact" of such reductions on the remaining librarian and teachers was not negotiable. 168 N.J. Super. at 55-58. The Council argues that Maywood is inapplicable here since no actual reduction in force has taken place. Further, the Council draws our attention to the fact that Maywood and Union Cty. Bd. of Ed. v. Union Cty. Teach. Ass'n, 145 N.J. Super. 435 (App.Div. 1976), certif. den. 74 N.J. 248 (1977), upon which the Board also relies, involved "local school districts, *188 where the statutory and regulatory procedures are substantially more detailed than those covering higher education." We do not find these distinctions persuasive.
More recently, this court ruled in Local 195, IFPTE, AFL-CIO v. State, 176 N.J. Super. 85 (1980) that the determination to contract or subcontract out work, even if such determination could result in termination of employment of certain employees, is a matter of managerial prerogative:
Clearly inherent in such a decision could be cost criteria, efficiency and quality considerations, determinations as to the time that the service may be needed, necessity to transfer employees, reduction in supervision needed, and indeed any number of factors that from a management point of view may make contracting out work a sound decision. It is difficult to conceive of a more fundamental management decision than the determination of who will perform a particular function. [at 91]
The majority's opinion in Local 195, IFPTE, AFL-CIO caused a vigorous dissent from Judge Morgan, who believed that a state proposal to contract out work done by public employees should not be removed from the scope of collective negotiations. Judge Morgan was of the opinion that the needs of the public employer to contract out public work for reasons of "economy, efficiency and quality in the public interest" should be balanced against the interests of the employees who would be removed from their respective jobs as the result of such a decision. She believed that collective bargaining with respect to the circumstances facing the court in Local 195 would not unduly compromise management prerogatives. We do not find Judge Morgan's concerns to be present in this case, for the circumstances here are substantially different from those facing us in Local 195. The regulations in question here are to be employed in the event of fiscal exigency, a situation which in our opinion does not readily lend itself to a balancing of needs and interests. The overwhelming need for managerial discretion in promulgating these regulations is apparent.

II
The Council next argues that the Board of Higher Education has exceeded its authority in enactment of these regulations. *189 More specifically, the Council argues that the Board's duties to establish policy for the system of higher education and to provide general supervision over the state system of higher education are limited by virtue of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. and by other statutory provisions governing the conduct of state colleges. See N.J.S.A. 18A:64-1; N.J.S.A. 18A:64-6.
In advancing that argument, however, the Council relies on its underlying claim that the regulations concern terms and conditions of employment. In addition, the Council ignores the fact that the regulations in question involve a process for declaring and handling a financial emergency at the state colleges. We do not find that there is authority, statutory or otherwise, which mandates negotiations on such a matter.

III
The Council next argues that the regulations adopted by the Board violate the tenure statutes. The Council contends that the regulations in question render the protection offered by N.J.S.A. 18A:60-3 meaningless. That statute provides:
Nothing contained in this chapter shall be held to limit the right of the commissioner in the case of any educational institution conducted under his jurisdiction, supervision or control, or of the board of trustees of a college, in the case of a college, to reduce the number of professors, associate professors, assistant professors, instructors, supervisors, registrars, teachers, or other persons employed in a teaching capacity in any such institution or institutions when the reduction is due to a natural diminution of the number of students or pupils in the institution or institutions. Dismissals resulting from such reduction shall not be by reason of residence, age, sex, marriage, race, religion, or political affiliation. When such professors, associate professors, assistant professors, instructors, supervisors, registrars, teachers, or other persons employed in a teaching capacity under tenure are dismissed by reason of such reduction those professors, associate professors, assistant professors, instructors, supervisors, registrars, teachers, or other persons employed in a teaching capacity having the least number of years of service to their credit shall be dismissed in preference to those having longer terms of service. Should any such professor, associate professor, assistant professor, instructor, supervisor, registrar, teacher, or other person employed in a teaching capacity under tenure be dismissed as a result of such reduction such person shall be and remain upon a preferred eligible list in the order of years of service for reemployment, whenever vacancies occur, and shall be reemployed by the commissioner in such order, when, and if, a vacancy in a position for which such professor, associate professor, assistant professor, *190 instructor, supervisor, registrar, teacher, or other person employed in a teaching capacity shall be qualified. Such reemployment shall give full recognition to previous years of service.
The Council has failed to discuss whether this statutory provision should be held to govern a reduction in staff due to a financial emergency. Instead, it attacks the regulations at issue and argues that the procedures specified therein would allow a college to nullify the protection of the tenure laws. We disagree. We cannot conclude that a dismissal made in good faith and based upon financial exigency would place in jeopardy the values protected by tenure. See Krotkoff v. Goucher College, 585 F.2d 675 (5 Cir.1978). See, also, "The Dismissal of Tenured Faculty for Reasons of Financial Exigency," 51 Ind.L.J. 417 (1976); "Financial Exigency as Cause for Termination of Tenured Faculty Members in Private Post Secondary Educational Institutions," 62 Iowa L.R. 481 (1976). Further, it appears that if a tenured faculty member was dismissed due to financial exigency, there would have to be a showing that the financial exigency was the bona fide cause for dismissal. See American Ass'n. Univ. Prof. v. Bloomfield College, 136 N.J. Super. 442 (App.Div. 1975).
Affirmed.
NOTES
[1] See, e.g., N.J.A.C. 9:2-5.5(a).