267 N.J. Super. 582 (1993)
632 A.2d 530
STATE OF NEW JERSEY, OFFICE OF EMPLOYEE RELATIONS, APPELLANT/CROSS-RESPONDENT,
v.
COMMUNICATIONS WORKERS OF AMERICA, RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1993.
Decided October 15, 1993.
*583 Before Judges PETRELLA, CONLEY and VILLANUEVA.
*584 Grey J. Dimenna, Senior Deputy Attorney General, argued the cause for appellant/cross-respondent (Fred DeVesa, Acting Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Dimenna, on the brief).
Steven P. Weissman argued the cause for respondent/cross-appellant (Mr. Weissman, attorney and on the brief).
Don Horowitz, Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission (Robert E. Anderson, attorney; Mr. Horowitz, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
The State of New Jersey, Office of Employee Relations ("State") appeals from the final decision of Public Employment Relations Commission ("PERC") determining that the adoption of a revised code of ethics by the Department of Treasury ("Treasury") so far as it prohibited its employees from preparing non-New Jersey tax returns, as being a conflict of interest, is mandatorily negotiable. Communications Workers of America ("CWA") cross-appeals from PERC's decision that so far as the revised code prohibited Treasury's employees from preparing New Jersey tax returns is not mandatorily negotiable. We reverse that part of the decision regarding the preparation of tax returns other than New Jersey, but affirm the decision regarding the preparation of New Jersey tax returns.
Treasury promulgated its first code of ethics in January 1972, which covered all subdivisions of Treasury including the Division of Taxation ("Division"). The 1972 code of ethics closely followed the general guidelines for ethical conduct set forth in N.J.S.A. 52:13D-23. Prohibited conduct included outside employment which would impair objectivity or independent judgment, or create an impression of conduct violative of the public trust. Further, the original code required employees to obtain approval from the *585 appropriate authority to engage in outside employment, but did not contain any outright ban against outside employment.
In subsequent years, the Division undertook a reevaluation process as to the appropriateness of employees of the Division engaging in outside employment involving the preparation of tax returns and other related tax matters. This concern was especially directed at auditors within the Division whose responsibilities included auditing tax returns, investigating civil and criminal tax violations and collecting funds from delinquent tax accounts. Of the 400 auditors in the Division, approximately forty percent were engaged in outside employment involving tax preparation, accounting or bookkeeping. As a result, Treasury determined that its code of ethics needed revision and updating to keep pace with changing ethical standards.
Therefore, Treasury developed a new code of ethics which applied to all of its divisions, including the Division of Taxation. The revised code of ethics placed certain restrictions on the outside employment of Division employees on the basis that the restricted employment constituted a conflict of interest or an appearance thereof in violation of the Conflicts of Interests Law, N.J.S.A. 52:13D-12 to -27. This revised code of ethics was developed without input from CWA, the employees' collective bargaining agent. In December 1990 and January 1991, the Treasurer and the Acting Director of the Division communicated with all employees of the Division concerning the employment restrictions set forth in the proposed Treasury code of ethics.
In accordance with the Conflicts of Interest Law, the proposed revised Treasury code of ethics was submitted to the Executive Commission on Ethical Standards ("ECES") for its consideration and approval. N.J.S.A. 52:13D-23(b). Upon review of the proposed code of ethics by the Attorney General, as required by statute, the ECES approved the revised Treasury code of ethics on January 17, 1991, with an effective date of February 15, 1991.
On February 8, 1991, CWA filed before PERC an unfair practice charge against the State alleging that Treasury refused to *586 negotiate on certain revisions to the Treasury code of ethics, specifically, those portions of the revised code of ethics which prohibit employees of the Division from engaging in outside employment involving the preparation of tax returns. CWA sought interim relief to stay the implementation of the Treasury's revised code of ethics. PERC's designee partially granted CWA's requested relief and enjoined Treasury from implementation of its code of ethics to the extent that it barred Division employees from working on tax problems or returns or determining tax liabilities regarding federal and foreign state taxes, but determined that the code of ethics could be implemented to the extent that it prohibited private employment by Division employees on tax matters processed or reviewed by the Division. We denied the State's motion for leave to appeal.
PERC determined that the provision[1] as it prohibited outside employment including the preparation of federal and other states' tax returns was not preempted and was mandatorily negotiable. PERC further determined that the provision as it prohibited outside employment with regard to the preparation of New Jersey tax returns was not mandatorily negotiable.
The State appeals from PERC's final decision and CWA cross-appeals.
In New Jersey, it is well settled that not all matters affecting public employees are subject to negotiations. The Supreme Court in In re IFPTE Local 195 v. State, 88 N.J. 393, 443 A.2d 187 (1982), established a three-part test to determine whether a matter required collective negotiations with a bargaining representative. The Court stated:

*587 Our opinions on public employment have established a three-part test for scope of negotiations determinations. First, a subject is negotiable only if it `intimately and directly affect[s] the work and welfare of public employees'.... Second, an item is not negotiable if it has been preempted by statute or regulation.... Third, a topic that affects the work and welfare of public employees is negotiable only if it is a matter `on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.' [Ibid. at 403-404, 443 A.2d 187 (footnote and citations omitted).]
Although the State agrees with CWA's argument that an agency's code of ethics and resulting restrictions on outside employment do impact on the working conditions of public employees, we do not have to determine whether the first prong of the IFPTE test was satisfied. Whether the second prong, preemption, was satisfied may be reasonably debatable, but the code has already been properly adopted. The third prong requires that terms and conditions of employment are negotiable only if the subject matter of negotiations would not "significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." Id., at 404, 443 A.2d 187. The test for the determination of this issue has been expressed as follows:
To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
[Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n, 94 N.J. 9, 14, 462 A.2d 137 (1983); (citations omitted).]
The underlying principle upon which the test is based was originally espoused in Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 393 A.2d 278 (1978), wherein the Court stated:
[T]he very foundation of representative democracy would be endangered if decisions on significant matters of governmental policy were left to the process of collective negotiations, where citizen participation is precluded. This Court would be most reluctant to sanction collective agreement on matters which are essentially managerial in nature, because the true managers are the people. Our democratic *588 system demands that governmental bodies retain their accountability to the citizenry.

[Id. at 163, 393 A.2d 278.]
See also Rutgers, The State University v. Rutgers Council of AAUP Chapters, 256 N.J. Super. 104, 115, 606 A.2d 822 (App.Div. 1992), aff'd, 131 N.J. 118, 618 A.2d 853 (1993); Univ. of Med. v. Am. Ass'n of U. Prof., 223 N.J. Super. 323, 332-33, 538 A.2d 840 (App.Div. 1988), aff'd, 115 N.J. 29, 556 A.2d 1190 (1989).
The Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -27, requires the head of each State agency to promulgate a code of ethics, subject to the approval of the ECES, which is "formulated with respect to the particular needs and problems of the agency to which said code is to apply." N.J.S.A. 52:13D-23. Thus, under this law, each agency, dependent upon its special duties and responsibilities, determines the type and nature of conduct, including outside employment, in which its employees may ethically and appropriately engage.
The Conflicts of Interest Law prohibits not only actual misconduct, but also the appearance of impropriety. N.J.S.A. 52:13D-23(e)(7). The statute is specifically based upon the need for government to "hold the respect and confidence of the people" through the creation of ethical guidelines for the conduct of public employees in both statutes and codes. N.J.S.A. 52:13D-12. Each agency and department of State government must adopt a code of ethics which guides and governs the conduct of its employees and generally complies with the ethical guidelines set forth in the law. N.J.S.A. 52:13D-23. Each entity is required, however, in recognition of its singular responsibilities and mission, to develop a code of ethics which meets the "particular needs and problems of the agency to which said code is to apply." N.J.S.A. 52:13D-23. The Treasury's code merely carries out N.J.S.A. 52:13D-23(e)(1) & (5).
The prohibitive and restrictive activities of the new code are substantially similar to the Rules of Conduct of the Internal Revenue Service which were adopted to supplement the Minimum Standards of Conduct of the Department of Treasury of the United States (revised May 1989) which specifically prohibit its *589 employees from "engaging in the preparation of tax returns for compensation, gift, or favor." Service Rule 224.1e.[2]
The determination of what constitutes ethical and proper behavior and thus what the substance of the agency's code of ethics shall be is delegated by statute to the head of each State instrumentality.[3]N.J.S.A. 52:13D-23(a). Beyond this statutorily-imposed responsibility, however, is the more basic responsibility of any government to ensure ethical conduct in government. What is more fundamental to good government operations than a code of ethics? What is ethical or a conflict of interest cannot be determined at the bargaining table. An act either is or is not unethical or a conflict of interest.
The Division is charged with the administration and enforcement of the tax laws of the State of New Jersey. The duties of the auditors and other employees of the Division necessarily grant them access to taxpayers' files, confidential reports, internal Division guidelines and procedures and other information which is not available to members of the general public, including tax preparers.[4] *590 In addition, access by the auditors to tax information from the federal tax system and those of other jurisdictions creates an appearance of a conflict of interest. At best, this gives taxpayers who utilize Division employees to prepare their returns an undue advantage, or the appearance thereof, over other members of the public. A taxpayer may employ a state tax auditor because he believes that he may get favored treatment. At worst, it could allow a taxpayer to avoid tax liability through the actions or inactions of a Division employee. However, it is not for us to determine the merit of the code of ethics.
The courts have distinguished between substantive versus procedural aspects of an issue involving governmental policy. In such instances, the courts have found that the substantive issues forming the basis of the agency's policy-based actions are not subject to negotiations while the procedural aspects of the policy's implementation may be negotiated. Bethlehem Tp. of Ed. v. Bethlehem Tp. Educ. Ass'n, 91 N.J. 38, 46-47, 449 A.2d 1254 (1982).
CWA cites Association of State Col. Fac. v. New Jersey Bd. of Educ., 66 N.J. 72, 328 A.2d 235 (1974), in support of its argument that an agency's code of ethics is a topic for negotiations. Contrary to CWA's argument, the Court did not rule that negotiations were required for the adoption of modifications to a code of ethics when the modifications involve policy issues pertaining to managerial prerogatives. While the Supreme Court found that the changes to the code of ethics should have been negotiated, the decision was based upon the fact that the modifications to the code of ethics in question did not involve any policy issues. The modifications in question involved procedural matters largely concerning what type of notice and approval was necessary prior to engaging in outside employment. Id., at 74-75, 328 A.2d 235.
*591 Any requirement that the Division negotiate over the terms and conditions of the prohibition against certain outside employment would substantially interfere with its inherent managerial prerogatives and substantial governmental policies. Negotiations with respect to this issue would also place the personal financial interests of agency employees above those of the public at large with respect to ethical conduct in State government. Because adoption of the code of ethics is a fundamental governmental policy decision, CWA did not satisfy the third prong of the test in In re IFPTE Local 195 v. State, supra.
PERC's determination that the part of the ethical code prohibiting outside employment involving the preparation of federal and other states' tax returns is mandatorily negotiable is reversed. PERC's determination that the portion prohibiting outside employment in the preparation of New Jersey tax returns is not mandatorily negotiable is affirmed.
NOTES
[1] VII. D2(c):

Preparing tax returns for compensation
No employee may engage in the preparation, directly or indirectly, of federal, state or local tax returns for compensation of any kind on behalf of any taxpayers.
[2] Employees may not engage in any outside employment or business activity which gives rise to a real or apparent conflict of interest. Such incompatible activities include:

a. Legal Employment or Practice  Legal activities involving Federal, State, local tax matters, or any matter in which the United States is a party.
b. Appearance On Behalf of Taxpayers  Appearing on behalf of any taxpayer as an attorney, agent, or representative before any governmental agency, federal, state, or local  in an action involving a tax matter except upon written authorization of the Commissioner of the Internal Revenue Service.
c. Accounting  Engaging in accounting, the use, analysis, and interpretation of financial records when such activity involves tax matters.
d. Bookkeeping  Engaging in bookkeeping, the recording of transactions, record making phase of accounting, when such activity is directly related to a tax determination.
e. Preparation of Tax Returns for Compensation  Engaging in the preparation of tax returns for compensation, gift, or favor.
[3] An agency is not totally unrestrained in determining the content of its code of ethics. Each entity's code of ethics is subject to review and approval of the Attorney General and the ECES. N.J.S.A. 52:13D-23(b).
[4] The Legislature's recognition of the potential for ethical abuses in this area and its resultant concern over the use of Division of Taxation records and files for private purpose is evidenced by the provisions of N.J.S.A. 54:50-8, which specifically prohibit the disclosure or use of Division of Taxation records or their use for personal advantage.