161 N.J. Super. 75 (1978)
390 A.2d 1198
IN THE MATTER OF TEANECK BOARD OF EDUCATION, PETITIONER-APPELLANT, AND TEANECK TEACHERS ASSOCIATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1978.
Decided July 15, 1978.
*77 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. David A. Wallace argued the cause for appellant Teaneck Board of Education (Mr. Gerald L. Dorf, attorney).
Mr. Theodore M. Simon argued the cause for respondent Teaneck Teachers Association (Messrs. Goldberg & Simon, attorneys; Mr. Louis P. Bucceri on the brief).
Mr. Sidney H. Lehmann argued the cause for Public Employment Relations Commission (Mr. Sidney H. Lehmann, General Counsel, attorney; Mr. Don Horowitz on the brief).
PER CURIAM.
This is an appeal from a decision and order of the Public Employment Relations Commission denying the request of the Teaneck Board of Education for an order permanently restraining arbitration of grievances filed by the Teaneck Teachers Association. The grievances complained of the inclusion of negative comments, based on the lack of participation of employees in voluntary activities, in evaluations.
In December 1976 and January 1977 certain teachers employed by the board and represented by the Association were given mid-year evaluations by their respective school administrators, pursuant to Article VII, entitled "Teacher Observation and Evaluation," of the contractual agreement between the board and the Association covering the period between September 1, 1976 and August 31, 1978. On January 31, 1977 the Association filed two grievances with the board claiming that the board had violated the evaluation procedures as set forth in Article VII. The Association contended that by placing negative comments relating to their nonparticipation in allegedly voluntary after-school *78 activities, i.e. Back to School Night and extracurricular activities, in certain teachers' files, particular administrators had relied upon factors that were not contractually includable in evaluation reports. Article VII of the contract reads, in part, at subsection (a) (1) that "such on-the-job evaluations shall include only school related activities and responsibilities." Subsequently, the board denied the respective grievances. On March 31, 1977 the Association filed a request for a panel of arbitrators with the Commission, although the board contended that the matters at issue were not grievable.
PERC observed that this case involved evaluation content and criteria and not evaluation procedures. It concluded that
* * * the subject matter of the grievances at issue in the Board's Scope Petition relates to a basic educational policy decision that concerns the manner and the means of providing educational services to students and thus is not subject to mandatory negotiations. The Commission concludes, however, that in the absence of any specific statutory proscription, nothing would preclude the parties from negotiating about the issue of evaluation criteria and content, i.e., it is a permissive subject of negotiations. We therefore conclude that a grievance with respect thereto may be submitted to arbitration if otherwise arbitrable under the parties' collective negotiations agreement.
The board contends that the only matters which may be negotiated are those as to which negotiation is authorized by statute. The board challenges the validity of PERC's classification of this matter or any other matter as a permissive subject of negotiation. According to its view, only "terms and conditions" of employment may be negotiated.
PERC held that evaluation criteria are not "terms and conditions" of employment and not mandatory subjects of negotiation. We need not pass on this conclusion since the Association has not filed a cross-appeal.
The question before us is whether evaluation criteria may legally be subject to negotiation. It should be noted *79 that even "terms and conditions" of employment may not be negotiable when the Legislature has so provided. Piscataway Tp. Bd. of Ed. v. Piscataway Maintenance, etc., Ass'n, 152 N.J. Super. 235 (App. Div. 1977). There, we reversed PERC and permanently restrained the arbitration sought by the Piscataway Maintenance and Custodial Association. We held that the contractual provision for extended total disability leave exceeded the authority of the board of education and, therefore, was invalid and unenforceable.
The board contends that PERC's holding evaluative criteria to be permissive subjects of negotiations is violative of our Constitution which provides that "The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years." N.J. Const. (1947), Art. VIII, § IV, par. 1. The Supreme Court has declared that "a system of instruction in any district of the State which is not thorough and efficient falls short of the constitutional command." Robinson v. Cahill, 62 N.J. 473, 513 (1973), cert. den. Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973). The court has also noted that a number of factors play a vital role in the educational result. These factors include:
* * * individual and group disadvantages, use of compensatory techniques for the disadvantaged and handicapped, variation in availability of qualified teachers in different areas, effectiveness in teaching methods and evaluation thereof, professionalism at every level of the system, meaningful curricula, exercise of authority and discipline, and adequacy of overall goals fixed at the policy level. Hence while funding is an undeniable pragmatic consideration, it is not the overriding answer to the educational problem, whatever the constitutional solution ultimately required. [Robinson v. Cahill, 69 N.J. 133, 141, n. 3 (1975), cert. den. sub. nom. Klein v. Robinson, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975), order vacated 69 N.J. 449, 468 (1976)]
*80 While professionalism and evaluation of teaching methods were viewed as two of a multitude of important factors contributing to the educational result, there was no showing in this case that arbitration of the propriety of including negative comments on teacher evaluations due to nonperformance of voluntary activities would result in a school system that is not thorough and efficient. There was also no showing that holding evaluative criteria to be permissive subjects of negotiations results in a school system which is not thorough and efficient. We find no merit in this argument.
The Legislature has declared that a board of education shall
* * * * * * * *
c. Make, amend and repeal rules, not inconsistent with this title or with the rules of the state board, for its own government and the transaction of its business and for the government and management of the public schools and public school property of the district and for the employment, regulation of conduct and discharge of its employees, subject, where applicable, to the provisions of Title 11, Civil Service, of the Revised Statutes. [N.J.S.A. 18A:11-1];
also that
Each board of education, subject to the provisions of this title and of any other law, shall employ and may dismiss a secretary or a school business administrator to act as secretary and may employ and dismiss a superintendent of schools, a custodian of school moneys, when and as provided by section 18A:13-14 or 18A:17-13, and such principals, teachers, janitors and other officers and employees, as it shall determine, and fix and alter their compensation and the length of their terms of employment. [N.J.S.A. 18A:16-1];
and,
Each board of education may make rules, not inconsistent with the provisions of this title, governing the employment, terms and tenure of employment, promotion and dismissal, and salaries and *81 time and mode of payment thereof of teaching staff members for the district, and may from time to time change, amend or repeal the same, and the employment of any person in any such capacity and his rights and duties with respect to such employment shall be dependent upon and governed by the rules in force with reference thereto. [N.J.S.A. 18A:27-4]
In addition,
Every board of education in this State shall cause each nontenure teaching staff member employed by it to be observed and evaluated in the performance of his duties at least three times during each school year but not less than once during each semester, provided that the number of required observations and evaluations may be reduced proportionately when an individual teaching staff member's term of service is less than one academic year. Each evaluation shall be followed by a conference between that teaching staff member and his or her superior or superiors. The purpose of this procedure is to recommend as to reemployment, identify any deficiencies, extend assistance for their correction and improve professional competence.
[N.J.S.A. 18A:27-3.1]
* * * * * * * *
The provisions of this act shall be carried out pursuant to rules established by the State Board of Education. [N.J.S.A. 18A: 27-3.3]
N.J.A.C. 6:3-1.19 provides:
* * * * * * * *
(c) Each local board of education shall adopt a policy for the supervision of instruction, setting forth procedures for the observation and evaluation of nontenured teaching staff members, including those assigned to regular classroom teaching duties and those not assigned to regular classroom teaching duties. Such policy shall be distributed to each teaching staff member at the beginning of his/her employment.
(d) Each policy for the supervision of instruction shall include, in addition to those observations and evaluations hereinbefore described, a written evaluation of the nontenured teaching staff member's total performance as an employee of the local board of education.
It should be noted that N.J.S.A. 18A:27-3.1, N.J.S.A. 18A:27-3.3 and N.J.A.C. 6:3-1.19 apply only *82 to nontenured teachers. Apparently, evaluative criteria pertaining to such employees are not permissive subjects of negotiation. They are subjects for determination by boards of education. However, N.J.S.A. 18A:11-1, N.J.S.A. 18A:16-1 and 18A:27-4 are more general.
In Clifton Teachers v. Clifton Bd. of Ed., 136 N.J. Super. 336 (App. Div. 1975), we declared that to accept the teachers' contention that the board's resolution, which provided that salary increments may be awarded only after satisfactory performance, concerns "terms and conditions" of employment which are mandatorily negotiable "would destroy the inherent right of the board to exercise its preeminent function to pass upon the quality of teacher performance  a function which is manifestly a management prerogative beyond the reach of negotiation." 136 N.J. Super. at 339.
In North Bergen Tp. Bd. of Ed. v. North Bergen Fed'n Teachers, 141 N.J. Super. 97 (App. Div. 1976), the board of education filed a complaint in the Chancery Division seeking to restrain a pending arbitration of the Federation's allegation that the board violated its collective bargaining agreement by appointing an acting vice-principal without following the criteria for promotion included in the agreement. The board relied on N.J.S.A. 18A:27-4, N.J.S.A. 18A:16-1 and N.J.S.A. 18A:26-2 (requiring teaching staff members to be certified. This provision is unimportant herein.). While we affirmed the order permanently enjoining arbitration, we did not expressly rely on those statutory provisions. However, we did conclude that,
* * * while the parties should meet to set promotional criteria, the ultimate criteria must be left to the board as a matter of major educational policy. Arbitrary action on the part of the board which bears no reasonable relationship to education goals, however, cannot and will not be tolerated. On the other hand, procedures by which promotional vacancies are filled should be negotiated, and if violated, be subject to arbitration. Such procedures would, of course, be subject to the board's ultimate authority to promote. [at 104]
*83 We also adopted this reasoning in In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12, 27 (App. Div. 1977). There, PERC sought to distinguish North Bergen Tp. Bd. of Ed. v. North Bergen Fed'n Teachers, above, by construing the proposals before it as procedures to be followed in filling vacancies. It is clear that grievance procedures are mandatory subjects of negotiation. N.J.S.A. 34:13A-5.3. Nevertheless, we concluded that such matters as a teacher's area of competence, quality of teaching performance, attendance record and length of service are directly concerned with qualifications for the vacancy and have little, if any, bearing on procedures to be followed in filling the vacancy. We also found that the proposed criteria for filling vacancies are matters of major educational policy on which the board may not be compelled to negotiate.
In Union Cty. Bd. of Ed. v. Union Cty. Teach. Ass'n, 145 N.J. Super. 435 (App. Div. 1976), we held that PERC lacks the power to compel local boards of education to negotiate the criteria or guidelines governing their decisions as to which nontenured teachers will not be reemployed due to reductions in personnel. There again, the court declared that such criteria are not mandatory subjects of negotiation.
In Clifton Bd. of Ed. v. Clifton Teachers Ass'n, 154 N.J. Super. 500 (App. Div. 1977), this court reversed the grant by the trial judge of an order permanently enjoining arbitration of whether notations on evaluations of teachers should be removed. Some teachers had engaged in a job action by refusing to perform certain professional duties, including participation in PTA meetings, remedial reading instruction and home and school meetings. The trial judge held that establishment of a system of teacher evaluation with proper standards could be the subject of negotiation but found that the contract in question was silent on that matter. We disagreed as to the silence of the contract, finding that the dispute between the parties was covered by the arbitration clause of the contract. However, we *84 made no express finding as to the propriety of the trial judge's holding that the proper standards for teacher evaluation could be the subject of negotiation.
After reviewing the pertinent statutes quoted above, we hold that negotiation of evaluative criteria is against public policy. Most of the cases in which the subject has been considered view teacher evaluation as a management prerogative. Cf. Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, 135 N.J. Super. 269 (Ch. Div. 1975), aff'd o.b. 142 N.J. Super. 44 (App. Div. 1976) ("Management responsibilities are the concern of the local and state boards and not subject to negotiation").
While we reverse, we note that the Association can still argue before the Commissioner of Education that comments on nonparticipation in voluntary activities should not be included in formal evaluations. See Arthur Barber and Barry Kelner v. Board of Education of the Town of Kearny, 1975 S.L.D. 58, 63 (1975). Our holding also does not suggest that no matter may be a permissive subject of negotiation. We only hold that evaluative criteria are not such permissive subjects. As was stated in In re Englewood Bd. of Ed., 150 N.J. Super. 265, 271 (App. Div. 1977), "Where the subject matter sought to be negotiated or arbitrated is left to the managerial discretion of the school board by legislative mandate, any agreement to the contrary and any directive to arbitrate by PERC is invalid and unenforceable."
Reversed.