BETHLEHEM TOWNSHIP BOARD OF EDUCATION, APPELLANT AND CROSS-RESPONDENT, v. BETHLEHEM TOWNSHIP EDUCATION ASSOCIATION, RESPONDENT AND CROSS-APPELLANT.

LINDEN BOARD OF EDUCATION, APPELLANT AND CROSS-RESPONDENT, v. LINDEN EDUCATION ASSOCIATION, RESPONDENT AND CROSS-APPELLANT.

Argued January 12, 1982—Decided August 2, 1982.

*John T. Barbour* argued the cause for appellants and cross-respondents (*Barbour & Costa*, attorneys).

*Sanford R. Oxfeld* argued the cause for respondents and cross-appellants (*Rothbard, Harris & Oxfeld*, attorneys).

*Sidney H. Lehmann*, General Counsel, argued the cause for respondent Public Employment Relations Commission (*Sidney H. Lehmann*, attorney; *Don Horowitz*, Deputy General Counsel, on the brief).

*Christine D. Weger,* General Counsel, argued the cause for *amicus curiae* New Jersey School Boards Association.

The opinion of the Court was delivered by

HANDLER, J.

In these cases, as in the companion case of *Council of New Jersey State College Locals v. State Board of Higher Education,* 91 *N.J.* 18 (1982), also decided today, we must determine whether regulations passed by State agencies preempt collective negotiations on the subjects that they specifically cover. The State Board of Education promulgated regulations which require local school boards to adopt policies and procedures for evaluating tenured teachers. See *N.J.A.C.* 6:3–1.21. The Public Employment Relations Commission and the Appellate Division, 177 *N.J.Super.* 479, both held that the regulations preempted negotiation on the topics specifically addressed therein. We now affirm.

I

In July 1978 the State Board of Education adopted regulations requiring local school boards to develop criteria and procedures for evaluating tenured teachers, to be operative by September 1, 1979. *N.J.A.C.* 6:3–1.21(g). The regulations provided that these "policies and procedures shall be developed under the direction of the district's chief school administrator *in consultation with* the tenured teaching staff members." *N.J.A.C.* 6:3–1.-21(c) (emphasis added). In mandating the establishment of such evaluation programs, the Board intended to "[p]romote professional excellence and improve the skills of teaching staff members ... [i]mprove student learning and growth ... [and p]rovide a basis for the review of performance of tenured teaching staff members." *N.J.A.C.* 6:3–1.21(b).

Later that year, the Bethlehem Township Board of Education and the Bethlehem Township Education Association (the teachers' union representative) engaged in collective negotiations.

The union submitted for negotiation a number of proposals on teacher evaluation. The Bethlehem Board refused to discuss the proposals, maintaining that the State Board's regulations totally preempted negotiation on the subject of teacher evaluation. It then petitioned the Public Employment Relations Commission (PERC) for a scope of negotiations determination on this question.

During the same school year, the Linden Board of Education met with teachers to develop an evaluation program. The Linden Education Association (the teachers' union representative) requested negotiation on that topic. The Board responded by filing a scope of negotiations petition with PERC. The Linden Board took the same position as the Bethlehem Board, contending that the State Board's regulations relieved local school boards of any obligation to negotiate questions of tenured staff evaluation criteria or procedures.

In joint decisions, the Commission held that while these regulations did not totally preempt negotiation in this area, they served to preempt negotiation on those terms and conditions of employment that they specifically set. See *In re Board of Education of the Township of Bethlehem*, 5 *NJPER* ____ (¶ ____ 1979); *In re Board of Education of City of Linden*, 5 *NJPER* 298 (¶ 10160 1979). The Commission then engaged in a proposal-by-proposal analysis to determine which of the proposals submitted by the union in the *Bethlehem* case were nonnegotiable, either because they involved matters of educational policy or because they addressed topics specifically covered by preempting regulations. PERC found all but two of the proposals to be nonnegotiable.[1]

---

[1]The Board challenged the negotiability of fifteen separate proposals, ten of which pertained to teacher evaluation and five to fair dismissal policies. The Commission found all five proposals dealing with teacher dismissal to be nonnegotiable matters of educational policy. PERC further found eight of the ten proposals on evaluation of tenured teachers to be nonnegotiable, either because they involved matters of educational policy or because they ad-

The Appellate Division affirmed. The Bethlehem and Linden Boards of Education petitioned for certification, and the Bethlehem and Linden Education Associations then cross-petitioned for certification. We granted all petitions. 87 *N.J.* 396 (1981).

## II

The primary issue in this case is whether administrative regulations that set terms and conditions of employment serve to preempt collective negotiations on those same subjects.

As a general rule, an otherwise negotiable topic cannot be the subject of a negotiated agreement if it is preempted by legislation. However, the mere existence of legislation relating to a given term or condition of employment does not automatically preclude negotiations. Negotiation is preempted only if the regulation fixes a term and condition of employment "expressly, specifically and comprehensively." *Council,* 91 *N.J.* at 30. The legislative provision must "speak in the imperative and leave nothing to the discretion of the public employer." *In re IFPTE Local 195 v. State,* 88 *N.J.* 393, 403–04 (1982), quoting *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 80 (1978). If the legislation, which encompasses agency regulations, contemplates discretionary limits or sets a minimum or maximum term or condition, then negotiation will be confined within these limits. *Id.* at 80–82. See *N.J.S.A.* 34:13A–8.1. Thus, the rule established is that legislation "which expressly set[s] terms and conditions of employment ... for public employees may not be contravened by negotiated agreement." *State Supervisory,* 78 *N.J.* at 80.

In giving preemptive effect to certain sections of the regulations here at issue, PERC and the Appellate Division correctly

---

dressed topics specifically covered by *N.J.A.C.* 6:3–1.21. The Commission found negotiable the other two proposals, covering notice to teachers of the identity of their evaluators (Proposal B.4.A.) and the frequency of evaluations (Proposal B.1.C.). See *infra* at 50.

relied on our holding in *State Supervisory* that "the adoption of any specific *statute* or *regulation* setting or controlling a particular term or condition of employment will preempt" negotiation on that subject. 78 *N.J.* at 81 (emphasis in original). This rule ordinarily applies to any administrative regulation, regardless of the agency that promulgated it. As we have clarified in today's *Council* decision, however, preemption does not automatically apply to regulations passed by agencies that act as both regulator and employer and intended to determine employment matters affecting its employees. The rule now established is that:

[i]f the agency acts solely as a regulator and has no direct employer interest over the employees affected, its regulations fixing terms and conditions of employment must be given the same preemptive effect as a statute .... However, if the agency acts in dual capacities and promulgates a regulation affecting employees under its control, its regulations establishing terms and conditions of employment will not necessarily preempt negotiation on the subject matter specifically covered therein. [*Council,* 91 *N.J.* at 28]

■ The State Board of Education performs no employer functions.[2] Consequently, the rule set forth in *Council* has no applicability to this case. Therefore, to the extent that the Board's regulations specifically address and establish terms and conditions of employment, they must be given preemptive effect.

The Bethlehem and Linden Boards claim that these regulations are so comprehensive that they preempt all negotiation on the subject of teacher evaluation criteria and procedures. We reiterate that for a regulation to preempt negotiation, it "must fix a term and condition of employment, and it must so provide

---

[2]The Bethlehem and Linden Education Associations intimate that the State Board of Education is really the alter ego of the local boards and is, therefore, acting as an employer over the employee that it regulates. This characterization of the Board's relationship with local boards belies the realities of the situation. The Board operates as a regulatory body with ultimate authority to make and enforce rules for the management and control of the public school system in New Jersey. *N.J.S.A.* 18A:4–10. See also *N.J.S.A.* 18A:4–15, –16. It is in no way an "alter ego" of the local boards, which have independent regulatory authority to run their own schools, so long as "not inconsistent with ... the rules of the state board." *N.J.S.A.* 18A:11–1.

expressly, specifically and comprehensively." *Council,* 91 *N.J.* at 30. Moreover, if the regulation sets a minimum or maximum term or condition of employment, then negotiation will be confined within those limits. *State Supervisory,* 78 *N.J.* at 80–82.

Applying this analysis to these regulations, we find that the regulations preempt negotiation on those terms and conditions of employment specifically covered in them. However, they do not totally foreclose negotiations on all aspects of the subject of procedures for evaluating tenured teachers.

*N.J.A.C.* 6:3–1.21 does not cover every possible detail on this subject matter. Rather, it simply provides a general set of guidelines and procedures for developing teacher evaluation programs. This is evidenced by the fact that the rules specifically leave to each local board the responsibility of fleshing out the details of its program. *N.J.A.C.* 6:3–1.21(a) and (c). Moreover, local boards are to develop policies "based upon but not limited to the above provisions ... [which] are *minimum requirements* for the evaluation of tenured teaching staff members." *Id.* (emphasis added).

 We need not discuss the preemptive effect of those provisions that address the substantive aspects of teacher evaluation. Such matters, which involve sensitive educational policy decisions, could not be the subject of mandatory negotiations, even in the absence of preempting legislation. As a general rule, negotiation is required only regarding those terms and conditions of employment "which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." *Board of Ed. of Woodstown-Pilesgrove v. Woodstown-Pilesgrove Ed. Ass'n,* 81 *N.J.* 582 at 591, quoting *State Supervisory,* 78 *N.J.* at 67. See *Council,* 91 *N.J.* at 30. While the policy established for evaluating tenured teachers intimately and directly affects the work and

welfare of those public employees, it also involves the exercise of inherent management prerogatives. A negotiated agreement on that subject would significantly interfere with the determination of governmental policy. Therefore, regardless of the presence of preempting legislation, there can be no negotiation on the subject of criteria for evaluating teaching staff. See *Assoc. of N. J. State Col. Fac. v. Dungan*, 64 *N.J.* 338 (1974); *Wyckoff Tp. Bd. of Ed. v. Wyckoff Ed. Ass'n*, 168 *N.J.Super.* 497 (App.Div.), certif. den., 81 *N.J.* 349 (1979).

■ On the procedural aspects of teacher evaluation, the regulations speak in the imperative on several points. They require, for example, that evaluation policies be distributed to all tenured teaching staff "no later than October 1" of each year and that amendments to such policies be distributed "within 10 working days after adoption." *N.J.A.C.* 6:3–1.21(d). However, on those procedural aspects not covered by the rules or addressed only to the extent of establishing a maximum or minimum limit, mandatory negotiation is permitted.

■ The Boards further claim that the rule requiring school administrators to develop policies and procedures "in consultation with" tenured teachers, *N.J.A.C.* 6:3–1.2(c), forecloses all collective negotiations on the subject of teacher evaluations. The Boards argue that this provision evidenced the State Board's intention to permit only discussion on this topic, and not negotiation.

In effect, the Boards ask us to turn a simple legislative requirement of consulation with teachers into a total ban on negotiations. The rule's "in consultation with" language establishes no specifics on teacher evaluation, other than to require a dialogue between school administrators and teachers. The effect of allowing such an open-ended regulation to preempt negotiation on this entire subject matter would be to give local boards *carte blanche* to establish whatever terms and conditions of employment it desired. Yet as PERC aptly noted in its decision in this case, a preempting regulation "limits the employ-

er's authority as much as it does the employees." 5 *NJPER* at
——. The mandate of *State Supervisory* is that a regulation
must speak comprehensively and in the imperative if it is to be
given preemptive effect. 78 *N.J.* at 80–82. This is because a
regulation will preempt negotiation only if it leaves no room for
discussion as to what is required of both the employer and the
employee. Hence, a preempting regulation must be complete;
it must say all there is to be said. This regulation, in contrast,
does not.

As we read this provision, it seems clear that the "in consulta-
tion with" language was intended to encourage discussion, even
on those subjects that would not otherwise be mandatorily
negotiable. See *Dungan*, 64 *N.J.* at 356, quoting *Dunellen Bd.
of Ed. v. Dunellen Ed. Ass'n*, 64 *N.J.* 17, 31–32 (1973). *Cf. Local
195*, 88 *N.J.* at 409–10 (public employment contract may include
provision requiring discussion on subcontracting decisions, even
though that subject matter is nonnegotiable). Therefore, rather
than restricting the channels of communication, this provision
actually requires discussion and, where appropriate, negotiation
on the subjects of procedures for evaluating tenured teachers
and the mechanism for discussing evaluation standards.

### III

Since these regulations do not preempt all negotiation in this
area, the question remains whether any of the union proposals in
the *Bethlehem* case are mandatorily negotiable. PERC found
two of the proposals negotiable—those pertaining to the fre-
quency of evaluations (Proposal B.1.C) and notification to teach-
ers of the identity of their evaluators (Proposal B.4.A.).

On appeal, only the New Jersey School Boards Associa-
tion, appearing as *amicus curiae*, has challenged the PERC
findings on these specific proposals, claiming that none of them
addressed negotiable subjects. We note that as a general rule
an *amicus curiae* must accept the case before the court as
presented by the parties and cannot raise issues not raised by

the parties. See *Byram Tp. Bd. of Ed. v. Byram Tp. Ed. Ass'n*, 152 *N.J.Super.* 12, 18 (App.Div.1977); *Endress v. Brookdale Community College*, 144 *N.J.Super.* 109, 123 n.6 (App.Div.1976).

The Appellate Division was, therefore, not required to reach this question. Nevertheless, it affirmed the PERC determinations. 177 *N.J.Super.* at 488–89. We also find those determinations to be correct.

■ Five of the fifteen proposals challenged dealt with the substantive aspects of teacher dismissals. Through four of these proposals, the union sought to establish a joint committee of teachers and administrators to develop specific criteria for determining when to terminate teacher employment. See Proposals A.1, A.2, A.3 and A.4 on "Fair Dismissal." An additional proposal would have required that disputed school board decisions to terminate teachers be submitted to the established grievance procedure. See Proposal B.5 or "Fair Dismissal." While the subject matter of these proposals was not covered by preempting legislation, the proposals were nevertheless nonnegotiable because they concerned sensitive matters of educational policy. The decision to reduce teaching staff and the criteria used to reach that decision have consistently been held nonnegotiable. See *Council*, 91 *N.J.* at 32; *In re Maywood Bd. of Ed.*, 168 *N.J.Super.* 45, 55–58 (App.Div.), certif. den., 81 *N.J.* 292 (1979); *Union County Regional Bd. of Ed. v. Union County Regional High School Teachers Ass'n*, 145 *N.J.Super.* 435 (App. Div.1976), certif. den., 74 *N.J.* 248 (1977).

All of the other union proposals in the *Bethlehem* case pertained to the same subject matter addressed in these regulations—that of tenured teacher evaluations. As with the dismissal policy proposals, three of these proposals sought to establish a joint committee of teachers and administrators to develop criteria for evaluating teachers. See Proposals A.1, A.2 and A.3 on "Teacher Evaluation." Since this area involves similar sensitive matters of educational policy, these proposals were also considered nonnegotiable. See *Dungan*, 64 *N.J.* 338; *Wyckoff*, 168

*N.J.Super.* 497; *Teaneck Bd. of Ed. v. Teaneck Ed. Assn.,* 161 *N.J.Super.* 75 (App.Div.1978).

The remaining proposals on "Teacher Evaluation" purported to address the procedural aspects of the evaluation program. Several of these proposals involved the exercise of inherent managerial prerogatives in the determination of governmental policy and were, therefore, not negotiable. See B.1.B. (teachers must be informed at least five days in advance of any classroom visitations for evaluation purposes); B.4.B. (evaluators must be full-time employees of school district and certified in the instructional areas they are evaluating); and B.10.C.(2) (written evaluations shall include a listing of the areas where a teacher requires improvement; areas not repeated in subsequent reports shall be considered remedied). Moreover, some of the proposals addressed points already covered by the regulations and were, thus, preempted. See B.8 (standardized test results of students shall not be used to evaluate teacher performance; preempted by *N.J.A.C.* 6:3–1.21(e)(3), (f)(4) and (h)(2)); B.11 (annual summary evaluation shall be determined by a compilation of required evaluations; preempted by *N.J.A.C.* 6:3–1.21(f)).

PERC and the Appellate Division found two of these proposals to be negotiable. Proposal B.1.C. provides:

> Classroom visitations/observations shall not occur on the same day, nor shall any observation occur prior to the previous evaluation conference. In no case should any observations occur within ten (10) school days of the previous evaluation.

We agree with PERC that this proposal intimately affected teachers' working conditions without significantly interfering with the exercise of managerial prerogatives. Proposal B.4.A. provides:

> Teachers shall be evaluated only by persons certified by the New Jersey State Board of Examiners to supervise instruction. By September 1 of each school year, each teacher shall be given the name of the person who will evaluate his/her classroom performance.

The first part of this proposal requires that evaluators be certified. This requirement is preempted by *N.J.A.C.* 6:3–1.-

21(h)(1). The second part of the proposal requires that teachers be given the names of their classroom performance evaluators by September 1 of each year. Once again, we agree with PERC and the Appellate Division that this proposal is negotiable because it intimately affects teacher working conditions without posing any significant interference with the exercise of managerial prerogatives.

## IV

Accordingly, the judgment of the Appellate Division is affirmed.

SCHREIBER, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ and PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For reversal*—None.