LOIS SHELKO, APPELLANT, v. BOARD OF EDUCATION OF THE MERCER COUNTY SPECIAL SERVICES SCHOOL DISTRICT, MERCER COUNTY, RESPONDENT.

Argued May 1, 1984—Decided August 7, 1984.

*Richard A. Friedman* argued the cause for appellant (*Ruhlman, Butrym and Friedman,* attorneys).

*Michael J. Haas,* Deputy Attorney General, argued the cause for respondent, State Board of Education (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

The narrow issue in this case is whether a teacher in a local special educational program that is taken over by a county special services district enjoys the tenure protection of *N.J.S.A.* 18A:28–16, even though other programs of the district continue to be locally administered thereafter. That statute protects the tenure rights of teachers transferred to Educational Services Commissions, Jointure Commissions, or other described agencies. The question arises because the statute, in guaranteeing that "all * * * tenure * * * rights of all teaching staff members * * * shall be recognized and preserved by the agency

assuming operational control," speaks in terms of a school, not a school program. We hold that the statute applies when a local school program is taken over by a county special services school district.

Specifically, the question here is whether petitioner acquired tenure with the Mercer County Special Services School District by virtue of having served as a teacher in the Ewing Township school system for two years and then in the Mercer County district for the next two years, during all of which time she was assigned to the same special education program. The Administrative Law Judge (ALJ), the Commissioner of Education, the State Board of Education, and the Appellate Division have reached varying determinations on the issue, and the case is not free from difficulty.

In 1976, Lois Shelko was hired by the Ewing Township Board of Education as a teacher in its "Project Child" program, providing instruction to multiply-handicapped infants, pre-schoolers and kindergartners. All funds for the program came from state or federal grants. For many years, Ewing had been the local education agency in Mercer County that applied for the funds for the program, which served the needs of the educationally-handicapped young of Mercer County. Such programs are highly specialized, beyond the normal capacity of local school districts, and are appropriate for regional delivery.

In 1977, concerned parents encouraged Mercer County to create a special services school district to deliver such educational programs for the handicapped. Peter Buermann, the director of the Ewing program, acted as consultant to the new county district and helped draw up the application to the State Department of Education for the necessary funding. The funds were thereafter made available to the Mercer district.

On Buermann's recommendation, the Mercer district hired Lois Shelko for the 1978–79 school year. The only question is whether her years of employment with Ewing may be tacked on

to her years with Mercer, thus giving her tenure of employment.

As noted, the question has not been resolved without difficulty at the various levels of decision. The ALJ recommended against tenure because he did not think that the consultant, Buermann, had authority to bind the nascent special services school district. In his view, under *N.J.S.A.* 18A:28–16, Ewing had "consciously and affirmatively" to agree that Mercer "would 'take over' the program of the former." The Commissioner of Education disagreed, finding there was a "tacit understanding and agreement" that the petitioner's program was being transferred with Ewing's cooperation to the new jurisdiction. The State Board of Education divided on the issue, agreeing with the ALJ that the course of events did not establish an agreement that the program was being transferred with Ewing's cooperation to the Mercer district; four members opposed the decision. The Appellate Division divided on the issue: The majority found that no agreement existed and that the word "school" in the statute did not include a "school program." The dissenting judge disagreed with such a narrow interpretation of "school," and recommended a remand to decide whether an agreement existed between Ewing and Mercer.[1] We now reverse primarily because we view teacher tenure as a matter of status, not of contract. *See Spiewak v. Board of Educ. of Rutherford,* 90 *N.J.* 63 (1982). Regardless of the subjective considerations of her two successive employ-

---

[1]Adding to the confusion is that in the course of litigation the case was resolved under different statutes. Two of the forums—the State Board of Education and the Appellate Division—decided the case under *N.J.S.A.* 18A:28–6.1, which preserves teachers' tenure rights if a school closes. There the central question was whether or not an "agreement" existed between Ewing and Mercer. The other two—the ALJ and the Commissioner—resolved the question as we do, under 18A:28–16, which preserves tenure rights if agencies "undertake the operation" of a school. Because we resolve the case under the latter statute, we do not pass upon what constitutes an "agreement" between boards under *N.J.S.A.* 18A:28–6.1.

ers, petitioner met the objective criteria of the statute and is entitled to tenure.

I.

■ Provision for regional delivery of educational services has implications for teacher tenure. As the forms of governance have altered, the Legislature has adopted varying responses. To illustrate: *L.* 1951, *c.* 128 and *L.* 1955, *c.* 240 guaranteed the tenure rights of any high school or junior high school teacher in the constituent districts taken over by a regional district, *N.J.S.A.* 18A:13-42; *L.* 1952, *c.* 236, § 20 protected teachers in the event of any change in the method of government of the school district or school districts by which they were employed on the date of such change, *N.J.S.A.* 18A:28-15; and *L.* 1967, *c.* 31 sought to preserve teachers' rights upon the creation of a new regional district, *N.J.S.A.* 18A:28-6.1.

County special services school districts were first authorized by *L.* 1971, *c.* 271. Under that law, a county's board of chosen freeholders may establish a district for the education and treatment of handicapped children. The act, commonly referred to as the Beadleston Act, *N.J.S.A.* 18A:46-29 to -46, defines a handicapped child in the language of *N.J.S.A.* 18A:46-1 as "any child who is mentally retarded, visually handicapped, auditorily handicapped, communication handicapped, neurologically or perceptually impaired, orthopedically handicapped, chronically ill, emotionally disturbed, socially maladjusted, multiply handicapped, or pre-school handicapped." The State Board of Education is authorized to prescribe rules and regulations for the organization, management, and control of such special services schools. *N.J.S.A.* 18A:46-30.

Again concerned by the implications for teacher tenure, the Legislature specifically addressed the effects of the takeover of local programs by a county special services district in *L.* 1973, *c.* 267, § 1, effective November 29, 1973:

Whenever an Educational Services Commission, a Jointure Commission, the Commissioner of Education, the State Board of Education, the Chancellor, the

State Board of Higher Education or the board of trustees of any State college, or any officer, board or commission under his, its or their authority shall undertake the operation of any school previously operated by a school district in this State, all accumulated sick leave, tenure and pension rights of all teaching staff members in said school shall be recognized and preserved by the agency assuming operational control of the school, and any periods of prior employment in such school district shall count toward the acquisition of tenure to the same extent as if all of such employment had been under the Educational Services Commission, Jointure Commission, the Commissioner of Education, the State Board of Education, the Chancellor, the State Board of Higher Education or the board of trustees of any State college, as the case may be. [*N.J.S.A.* 18A:28–16.]

As originally introduced, the bill provided that "all teaching staff members shall continue in their respective positions * *." *S.* No. 411, 195th Leg., 2d Sess. (1973). In his conditional veto, Governor Cahill concluded that this provision, read literally, might be interpreted to require the retention of teachers even if their position was not necessary in the new regionalized school district, or if the teacher no longer wished to continue working in that capacity. He also distinguished between tenure and seniority rights, and believed that the

most appropriate way of dealing with the reemployment rights of non-tenured teachers is to amend this bill to require that they must be given notice of whether they will be offered a contract for the coming academic year on or before April 30, in accordance with P.L. 1971, c. 436 ([*N.J.S.A.*] 18A:27–10 et seq.). This would give the non-tenured teachers the same rights they would have had if no transfer were to occur, while preserving the rights of the employer to decide whether to rehire a probationary teacher.

The bill was enacted with his recommendation and the pattern that he predicted was essentially followed in this case, with a slight variation due to the overlapping sequence of time involving the creation of the school district. Mrs. Shelko, though not tenured after working two years in Ewing, was offered contracts for the two succeeding years with Mercer.

Why then did the State Board of Education not apply the statute specifically enacted to deal with the situation presented? In its decision and in its legal committee's report, the Board emphasized the source of the funds for the program as a consideration in its decision. It said:

Ewing has simply discontinued acting as the local education agency for the purpose of administering funds from other sources for a program which Ewing was not required to operate. *Cf. Capella v. Board of Education of Camden County Vocational Technical School*, 145 *N.J. Super.* 209, 214 (App.Div.1976) [ (no tenure rights for part-time teachers of optional adult evening classes) ].

However, at the time of the Board's decision in September 1981, it did not have the benefit of this Court's decision in *Spiewak*, *supra*, 90 *N.J.* 63. In that case, we dealt with tenure in the context of teachers who provide remedial and supplemental education to handicapped children and are compensated with federal funds rather than local school monies. The Court disapproved *Point Pleasant Beach Teachers Ass'n v. Callam*, 173 *N.J.Super.* 11, certif. denied, 84 *N.J.* 469 (1980), which held that tenure was unavailable to teachers paid with federal funds and not retained on a contractual basis. The Court further noted that "the *Point Pleasant* court also relied on *Capella* [*supra*, 145 *N.J.Super.* at 209]," 90 *N.J.* at 79, and said:

> The decision in *Point Pleasant* relies on the wrong legal principles. By focusing on the contractual relations between the parties and not the statutory criteria for tenure, the court in *Point Pleasant* overlooked the authority which holds that tenure is a legal right governed by statute rather than contract. [*Spiewak*, *supra*, 90 *N.J.* at 76.]

## II.

Focusing not upon the contractual relations between the parties but strictly upon the language of the statute, as required by *Spiewak*, we find that its terms encompass the case before us. Our overwhelming sense of the reality of the situation is that this is precisely the kind of takeover the Legislature contemplated. It is conceded that before and after the transition we are essentially looking at the same teachers, the same students, the same curriculum, and the same classroom. When a transition from local to district control of such a program looks, sounds, and acts like a takeover, we should treat it as a takeover.

In 1971, the State Department of Education actively encouraged Ewing Township to serve as the local education agency to be eligible to receive federal funds and provide educational

services for multiply-handicapped children. Under federal law it was necessary that there be such a local sponsor. Ewing agreed to take on this responsibility. It served the young people of the county through a variety of programs. Such programs served those who had orthopedic, neurological, or communication impairments. The Ewing District served the children of Mercer County through two such facilities, one at Titusville and one at the Kisthardt Center. The particular program that Lois Shelko was hired for served communication-handicapped children between the ages of three and five. The "uncontroverted facts" that the ALJ found included the following:

It is to be noticed here that during 1977–78, petitioner continued to perform her contractual duties for the Ewing Board at the Kisthardt Center of Project Child; that her immediate supervisor, the Director of Special Services [Buermann], was performing unpaid consultant services to the newly created Board of the County Special Services Unit; and that during the spring of 1978, the Director of Special Services conducted a meeting of all Ewing's Project Child staff members. The Director explained at that meeting that the newly created Mercer County Special Services School District would assume the operation of Project Child as of the 1978–79 academic year and that the Ewing Board would no longer be the local education agency for purposes of the project's funding, organization, or operation.

Petitioner received, without making application or being interviewed for, a proffered contract of employment, dated April 25, 1978, from the Mercer County Special Services School District for 1978–79, which she accepted * * *. The Ewing Board offered petitioner neither a contract of employment nor a written notice that her employment with it would not be continued for 1978–79, according to the provisions of *N.J.S.A.* 18A:27–3.2.

In addition, there was admitted into evidence a letter from the president of the Mercer County Special Services School District, dated March 29, 1978, that specifically recited that

[d]uring the past school year, the Ewing Township Board of Education accepted the responsibility as the receiving local education agency to provide the special education program for the multiply handicapped children in Mercer County. This program is to be terminated June 30, 1978, and will be absorbed by the Mercer County Special Services School District.

In his testimony, Mr. Buermann explained:

Q. And it was understood that in meeting those needs the Mercer County District would supplant Ewing's role; isn't that a fact?

A. We would meet the needs, yes.

Q. And take over Ewing's place. Without saying how it happened or whether it was transferred or whatever, it was understood that Mercer County would replace Ewing; isn't that a fact?

A. Among other things, yes.

Q. With respect to the program Mrs. Shelko was involved in?

A. Yes.

His testimony paralleled that of Marion Doherty, vice-president of the Mercer County Special Services School District. She put it simply:

Q. It was understood that at the conclusion of the '77-'78 school year that students served at the Kisthardt Center would be served by Mercer; correct?

A. Yes.

It would be very difficult to argue with any degree of conviction that the Ewing program was not taken over by the Mercer County School District.

The Superintendent of the Mercer County School District sought to distinguish the program on the basis that the Ewing program did not have an individualized education program (IEP) as required by *N.J.A.C.* 6:28–1.8. It is questionable whether that requirement applied to children aged three to five, until *L.*1981, *c.* 415, and, moreover, there was no evidence that the Mercer Board made any change either in the curriculum or the practices of the program actually taught by Lois Shelko.

It is true that the April 1978 contract of the Mercer School District contained a proviso that it was entered into "with the understanding that programmatic approval has not yet been obtained from the New Jersey State Department of Education, and that if such approval is not obtained prior to the 1st day of September 1978, then this contract shall be null and void and without force and effect." But we have already seen that tenure is not a matter of contract but of status. *Spiewak, supra,* 90 *N.J.* 63.

It may be argued, however, that Lois Shelko's program was not a school within the meaning of *N.J.S.A.* 18A:28–16 and that therefore she is not covered by the statute. This, however, would read all practical meaning out of the statute, because by definition the special services school districts never take over

the entire operation of a school but are limited to providing educational services for the disabled. In *Stuermer v. Board of Educ. of the Special Services School Dist. of Bergen Cty.,* 1978 *S.L.D.* 628, the Commissioner of Education explained that "[s]ince Jointure Commissions were created only for the purpose of special education classes, 'school' as referenced in *N.J.S.A.* 18A:28–16 must mean special education classes." [2] This straightforward analysis based on the realities of the statute avoids engaging in the esoteric quest of defining "what is a school," although there is ample precedent that a program for the disadvantaged would meet that definition. *Areba School Corp. v. Mayor & Council of Randolph,* 151 *N.J.Super.* 336 (App.Div.), certif. denied, 75 *N.J.* 586 (1977) (residential institution for treatment and education of emotionally disturbed children is a "school" under municipal zoning ordinance).

*In the Matter of the Closing of Jamesburg High School,* 83 *N.J.* 540 (1980), does not dictate a contrary result. There, neighboring school districts agreed to accept students from the defunct Jamesburg High School, but made no agreements to accept Jamesburg teachers. The Commissioner then ordered that a proportional number of tenured Jamesburg teachers be transferred as well. The Court held that the express language of *N.J.S.A.* 18A:28–6.1 required an agreement, which was absent, and that the Commissioner had no inherent power to force

[2]Therefore, consistent with the harmonious interpretation of the statutes, he held that "schools" or "grades" in *N.J.S.A.* 18A:28–6.1 must be interpreted in the same manner as for *N.J.S.A.* 18:28–16 and –17. In *Stuermer,* the precise issue was whether a tenured teacher of the Hackensack Board continued to enjoy that tenure after termination of the Hackensack program for deaf pupils for reasons of economy, which program was taken over by the county board pursuant to agreement between the two boards. The county board there argued that the program for the deaf was not structured on the basis of grades, and thus was not a grade or a school within the meaning of *N.J.S.A.* 18A:28–6.1. Since *N.J.S.A.* 18A:28–16 and –17 were not effective until 1973, her transfer was covered by the less explicit prior law, *N.J.S.A.* 18A:46–43. The Commissioner found that her tenured *stature* was preserved upon her joining the county board even though she had not served three continuous years with the county.

such an agreement. By contrast, *N.J.S.A.* 18A:28–16, the statute in question here, does not require an agreement between the two districts. *See also In the Matter of Franklin Educ. Ass'n v. Board of Educ. of the Wallkill Valley Regional School District,* 1980 *S.L.D.* —— (OAL Docket Nos. EDU 3315–80 and 3564–80) (Dec. 12) (when the "very same" students previously educated in local school are educated by new regional high school, there is a "change in * * * government" under *N.J.S.A.* 18A:28–15 and teachers' tenure rights are preserved).

Nor do we believe that the Legislature would have intended that tenure not extend to the new employment because the program was not, at the time, one mandated for provision by the Ewing school district. We need only observe, as we did in *Spiewak,* that the statute that confers tenure speaks only of "teaching staff members." 90 *N.J.* at 82. It does not speak of teachers in programs that are mandated or funded by state or federal law. We do not believe that the Legislature would have intended that these teachers of the disabled, engaged in perhaps the most difficult of educational service, would not enjoy the protection of teacher tenure law. As we have seen, the Legislature, as each occasion arose, shaped our tenure laws to fit evolving educational patterns.

We note in this regard as well that *N.J.S.A.* 18A:46–6 now provides that each board of education is under a statutory duty to identify children between the ages of three and five years who "require and would be benefited by special education programs and services which may prevent their handicaps from becoming more debilitating." *L.*1981, *c.* 415. The programs and services required for handicapped children between the ages of three and five may be provided, among other things, by either special programs and services in the district or through a county special services school district. *N.J.S.A.* 18A:46–6.1. New Jersey prides itself on its commitment to education for the handicapped. We doubt that the Legislature would have any less concern for the teachers of the handicapped.

In short, we are satisfied that Lois Shelko was a qualified teacher in the Ewing special education program that was taken over by the Mercer County Special Services School District, and that the tenure protection of *N.J.S.A.* 18A:28–16 applies to her. Such judicial recognition of tenure rights is not a warrant for waste, inefficiency, or incompetence. Adequate provisions remain in the law to deal with those circumstances. *See Bethlehem.Tp. Bd. of Educ. v. Bethlehem Tp. Educ. Ass'n*, 91 *N.J.* 38 (1982) (local school boards must adopt policies to evaluate tenured teachers); *Spiewak, supra*, 90 *N.J.* at 82 (good faith economic reasons will justify termination of tenured teacher).

The judgment of the Appellate Division is reversed. The matter is remanded to the State Board of Education to fashion an appropriate remedy.

POLLOCK, J., dissenting.

For two school years, 1976–77 and 1977–78, plaintiff was employed by Ewing District (Ewing) to teach in an optional special education program, "Project Child," which was funded by the state and federal governments. Ewing did not provide any financial support from its current expense budget, and students outside Ewing participated in the program. In 1977, the Mercer County Board of Chosen Freeholders created Mercer County Special Services School District (County District) for the education of handicapped children, and Ewing discontinued "Project Child" at the end of the 1977–78 school year.

The County District entered into a contract with plaintiff for two school years, 1978–79 and 1979–80, at the end of which it terminated her employment. The majority reasons that plaintiff's two years with Ewing must be added to her two years of employment with the County District and concludes that she is a tenured teacher of that district. The effect of that decision is to compel the County District to grant tenure to plaintiff, although the County District determined two years after first employing her that it did not wish to continue her employment.

In reaching its conclusion, the majority hinges its decision on *N.J.S.A.* 18A:28–16, which provides for the preservation of tenure rights when a board under the jurisdiction of the commissioner "shall undertake the operation of any school previously operated by a school district in this State * * *." Crucial to the majority decision is the determination that "Project Child" is a "school," the operation of which was undertaken by the County District.

Neither the administrative law judge, who found that plaintiff could not tack her years of service with Ewing to the years served with the County District, nor the commissioner, who set aside the judge's decision, determined whether "Project Child" was a "school." The Appellate Division, however, disagreed with the conclusion that "Project Child" was a school as did the State Board of Education. So do we.

As the Appellate Division explained in its unreported decision:

> Petitioner argues that the term 'school,' as that word is used in the phrase 'any school previously operated by a school district' in *N.J.S.A.* 18A:28–16, means 'program' as well. The Administrative Law Judge thought not and the Board thought not also. This is in part because we are permitted to accord deference to the interpretation of the law applied by the administrative agency affected. *The Passaic Daily News v. Blair*, 63 *N.J.* 474, 484 (1973). *But see Mayflower Securities, supra,* 64 *N.J.* [85] at 93. This is also because to us intent is also apparent from the plain language of the statute. The Legislature, not at all without opportunity to expand the perimeters of the tenure grant, limited the expression and the context to the *school* situation, speaking in context, for instance, of the undertaking of 'the operation of any school' and 'the agency assuming operational control of the school.' Even without reference to the obvious meaning of the word 'school,' we observe that it is the institution that is 'operated.' It is much more likely that programs are administered rather than operated. Where a statute has a clearly expressed meaning, there is no room for construction or interpretation. [Slip op. at 3–4.]

As previously indicated, the majority resolves this matter under *N.J.S.A.* 18A:28–16 without reference to whether an agreement existed under *N.J.S.A.* 18A:28–6.1 between Ewing and the County District to continue "Project Child." We find, however, that the requirements of *N.J.S.A.* 18A:28–6.1 are not satisfied.

The reason is that the County District never entered an agreement with Ewing with respect to "Project Child."

As the State Board of Education found:

The Commissioner overruled the initial decision on the ground that the facts spelled out 'a tacit understanding and agreement' between Ewing and respondent that the program in which petitioner was employed was being transferred with Ewing's cooperation to respondent's district. In our view, the course of events did not establish an agreement of the type contemplated by *N.J.S.A.* 18A:28–6.1.

We further conclude that the majority misplaces its reliance on the Commissioner's opinion in *Stuermer v. Bd. of Educ. of the Special Services School Dist. of Bergen Cty.*, 1978 *S.L.D.* 628. In *Stuermer,* the teacher had acquired tenure with the Hackensack Board of Education by which she was employed in a required program for deaf pupils. When the Hackensack Board discontinued that program, the defendant Board assumed operation of the program. In the present case, the County District did not agree to assume operation of Ewing's program, and plaintiff did not have tenure with Ewing. To the extent that *Stuermer* held the word "school" in *N.J.S.A.* 18A:28–16 to include a "program," we believe the Commissioner erred. In reaching that conclusion, we note that the State Board of Education, which has the ultimate administrative responsibility, has not adopted the Commissioner's misinterpretation.

Finally, we find the decision of the Appellate Division to be consistent with our later decision in *Spiewak v. Rutherford Bd. of Educ.*, 90 *N.J.* 63 (1982), upon which the majority relies. *Spiewak* expressly recognizes that tenure is a legal right governed by statute rather than contract. The right to tenure ordinarily depends on service for three years with the same school district. *See N.J.S.A.* 18A:28–5. Thus, if a teacher has two years' service with School District A and then is employed by School District B for two more years, the teacher does not acquire tenure. Unless a teacher's service fits within an exception to the general rule, service with one school district may not be "tacked" on to service with another district. We find the

majority opinion, which ignores these basic principles, to be flawed.

Although the right to tenure does not depend on the agreement between a school board and a teacher, a teacher must, nonetheless, satisfy the statutory requirements for tenure. Here, "Project Child" was not a "school" within the intendment of *N.J.S.A.* 18A:28–16 and, even if it were so viewed, the County District was not assigned the operation by Ewing and did not undertake the operation of "Project Child" from Ewing. Consequently, she does not satisfy the statutory requirements.

As *Spiewak* expressly recognizes, "the tenure statute in no way deprives a school board of flexibility. A board can deny tenure to a teacher simply by dismissing her before she has completed the required years of service." *Spiewak, supra,* 90 *N.J.* at 79. By terminating Mrs. Spiewak's relationship two years after it first employed her, the County District complied completely with that requirement.

We would affirm the judgment of the Appellate Division.

Justices CLIFFORD and SCHREIBER join in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN and GARIBALDI, JJ.—4.

*For affirmance*—Justices CLIFFORD, SCHREIBER and POLLOCK—3.