**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4948-15T3

IN THE MATTER OF
STATE OF NEW JERSEY,

    Petitioner-Appellant,

and

COUNCIL OF NEW JERSEY
STATE COLLEGE LOCALS, AFT,

    Respondent-Respondent.

_____

Argued October 24, 2017 — Decided November 21, 2017

Before Judges Hoffman and Mayer.

On appeal from the New Jersey Public
Employment Relations Commission, Docket No.
SN-2015-031.

John J. Peirano argued the cause for
appellant (McElroy, Deutsch, Mulvaney &
Carpenter, LLP, attorneys; Mr. Peirano, of
counsel and on the briefs; David M. Alberts,
on the briefs).

Kevin P. McGovern argued the cause for
respondent Counsel of New Jersey State
College Locals, AFT (Mets Schiro McGovern &
Paris, LLP, attorneys; Mr. McGovern, of
counsel and on the brief).

          Don Horowitz, Senior Deputy General Counsel,
          argued the cause for respondent New Jersey
          Public Employment Relations Commission
          (Robin T. McMahon, General Council,
          attorney; Mr. Horowitz, on the statement in
          lieu of brief).

PER CURIAM

The State of New Jersey appeals from a September 24, 2015 final agency decision issued by the Public Employee Relations Commission (PERC) determining that the development of procedures for tenure-upon-hire in accordance with N.J.S.A. 18A:60-16 (Statute) are negotiable, and not pre-empted. We affirm.

On March 31, 2014, the Council of New Jersey State College Locals, AFT (Council) filed a grievance on behalf of its union member alleging that eight State colleges and universities (Colleges) ignored demands to negotiate procedures for offering tenure-upon-hire to new faculty contrary to the collective negotiations agreement (CNA) between the State and Council.

The Council's grievance was denied by the New Jersey State Office of Employee Relations. The Council appealed the denial of its grievance and requested binding arbitration in accordance with the CNA. The State filed a petition for a scope of negotiations determination with PERC and sought to restrain arbitration, arguing that the Statute preempted negotiation for tenure-upon-hire procedures. PERC held the Statute did not preempt

negotiations and denied the State's request to restrain arbitration.

On appeal, the State argues: (1) the Statute preempts negotiation over tenure-upon-hire procedures; (2) PERC improperly relied on Bethlehem Township Board of Education v. Bethlehem Township Education Association, 91 N.J. 38 (1982); and (3) compelling negotiations for tenure-upon-hire procedures would impinge upon public policy determinations.

We first address the appropriate standard of review. The State argues that appellate review of PERC's scope of negotiations determination should be de novo because PERC's determination turns upon interpretation of a statute outside the scope of the agency's expertise. The Council counters that PERC's determination should be accorded substantial deference applicable to PERC's interpretation of its enabling legislation, including scope of negotiations determinations. See N.J.S.A. 34:13A-5.4(d).

We are not "bound by [an] agency's legal opinions." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div.), certif. denied, 200 N.J. 210 (2009) ("Statutory and regulatory construction is a purely legal issue subject to de novo review.") We need not accord deference where the statute that the agency interprets is beyond the agency's charge. See Commc'ns Workers, Local 1034 v. N.J. State Policemen's Benev. Ass'n, Local

203, 412 N.J. Super. 286, 291 (App. Div. 2010) ("PERC's interpretation of the law outside of its charge is entitled to 'no special deference.'") (quoting In re Camden Cty. Prosecutor, 394 N.J. Super. 15, 23, (App. Div. 2007)). Where a scope of negotiations determination is guided by PERC's interpretation of a statute outside its area of expertise, as in this matter, PERC's decision is not entitled to any special deference and our review is de novo.

The Statute provides:

> The board of trustees may, upon the hiring of a new faculty member, grant tenure to the member if he was previously under tenure at an accredited four-year institution of higher education. A State college shall develop procedures regarding the granting of tenure upon hiring to a new faculty member who was previously under tenure at an accredited four-year institution that are consistent with decisions for tenure at the State college, and shall include faculty members in the development of the procedures.
>
> [N.J.S.A. 18A:60-16(b).]

The State argues that tenure-upon-hire is statutorily pre-empted and therefore non-negotiable. A statute or regulation will preempt negotiability if it "fixes a term and condition of employment 'expressly, specifically or [,] and comprehensively.'" Bethlehem, supra, 91 N.J. at 44 (quoting Council of N.J. State Coll. Locals v. State Bd. of Higher Educ., 91 N.J. 18, 30 (1982)).

4

The statute or regulation must "speak in the imperative and leave nothing to the discretion of the public employer." State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 80 (1978). "Where a statute sets both a maximum and a minimum level of employee rights or benefits, mandatory negotiation is required concerning any proposal for a level of protection fitting between and including such maximum and minimum." Id. at 82; see also Bd. of Educ. v. Fair Lawn Educ. Ass'n., 174 N.J. Super. 554, 558 (App. Div. 1980).

We agree with PERC that "the statute's language establishes no specifics with respect to tenure-upon-hire other than to require dialogue between administrators and faculty members. Whereas a preempting statute must be complete and shall say all that there is to be said, N.J.S.A. 18A:60-16(b), in contrast, does not." The plain language of the Statute is not so express and explicit regarding procedures for tenure-upon-hire that the Colleges are left with no discretion and nothing to negotiate. We find the express language of the Statute requires negotiations regarding tenure-upon-hire procedures. See State Supervisory Emps. Ass'n, supra, 78 N.J. at 82 (setting of guidelines in a statute does not preclude negotiations for terms that fit within those guidelines).

Next, the State argues that the Statute's reference to "faculty" precludes negotiations. This concept was expressly rejected by the Court in Bethlehem Township Board of Education v.

Bethlehem Township Education Association, 91 N.J. 38, 48 (1982). Contrary to the State's argument, the term in the Statute is "faculty members," not "faculty." The State's misreading of the Statute is significant because the Legislature specifically and unambiguously defined "faculty member" in the definition section of the State and County College Tenure Act, N.J.S.A. 18A:60-7. "[F]aculty member" "means any full-time member of the teaching staff appointed with academic rank. Other full-time professional persons shall be considered faculty members if they concurrently hold academic rank." N.J.S.A. 18A:60-7(b).

Our role in interpreting the Statute is to "determine and give meaning to the Legislature's intent[,]" by first examining "the plain language of the statute, which is typically the best indicator of intent." In re Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 467 (2013). We give words their "ordinary, generally accepted meaning[,]" but when "the Legislature uses technical words and phrases that have 'a special or accepted meaning in the law,' we construe them 'in accordance with such technical or special and accepted meaning.'" Ibid. (quoting N.J.S.A. 1:1-1). Courts will not "rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way

of the plain language." Marino v. Marino, 200 N.J. 315, 329 (2009)
(quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

Because the Legislature defined the term "faculty member" as
any full-time member of the teaching staff, we need not look beyond
the expressed definition of that phrase. Therefore, we disagree
that "faculty" is limited to faculty who serve in a collegial
governance and managerial capacity and excludes faculty who serve
in a union member capacity.

We also reject the State's argument that PERC improperly
relied on Bethlehem in determining that tenure-upon-hire
procedures are negotiable. The Bethlehem case involved
promulgating procedures for evaluating tenured teachers in
accordance with regulations adopted by the local boards of
education. Several teachers' unions demanded negotiations to
establish procedures relating to tenured teacher evaluations. The
school districts filed scope of negotiations petitions with PERC,
and the agency concluded that the regulations preempted
negotiation.

The Bethlehem Court disagreed and found that regulations
requiring schools to develop procedures with respect to the
evaluations did not preempt negotiation of those procedures. The
Court reasoned, "[t]his is evidenced by the fact that the rules
specifically leave to each local board the responsibility of

fleshing out the details of its program." Bethlehem, supra, 91

N.J. at 46. The Court wrote:

> In effect, the Boards ask us to turn a simple
> legislative requirement of consultation with
> teachers into a total ban on negotiations.
> The rule's "in consultation with" language
> establishes no specifics on teacher
> evaluation, other than to require a dialogue
> between school administrators and teachers.
> The effect of allowing such an open-ended
> regulation to preempt negotiation on this
> entire subject matter would be to give local
> boards carte blanche to establish whatever
> terms and conditions of employment it desired.
> . . . . [A] regulation must speak
> comprehensively and in the imperative if it
> is to be given preemptive effect. This is
> because a regulation will preempt negotiation
> only if it leaves no room for discussion as
> to what is required of both the employer and
> the employee. Hence, a preempting regulation
> must be complete; it must say all there is to
> be said. This regulation, in contrast, does
> not.
>
> As we read this provision, it seems clear that
> the "in consultation with" language was
> intended to encourage discussion
> . . . . Therefore, rather than restricting
> the channels of communication, this provision
> actually requires discussion and, where
> appropriate, negotiation on the subjects of
> procedures for evaluating tenured teachers and
> the mechanism for discussing evaluation
> standards.
>
> [Id. at 47—48 (citations omitted).]

PERC cited extensively from the Bethlehem decision finding

that the Statute did not preempt negotiations. Like the Bethlehem

case, the Statute gives a general guideline and directs the

Colleges to develop their own procedures with mandatory inclusion of faculty members. See N.J.S.A. 18A:60-16(b). Similar to the regulation in Bethlehem, the Statute refers only to procedures, and not to substantive determinations of hiring or tenure. The State's attempt to distinguish the Bethlehem case is misguided as the term "faculty" is not limited to members of the Colleges' governing body for the reasons we have stated. Nor are we persuaded by the State's argument that Bethlehem is distinguishable because the procedures in that case applied to current employees as opposed to prospective hires. The terms and conditions of employment for prospective employees are negotiable. See Belleville Ed. Ass'n v. Belleville Bd. of Ed., 209 N.J. Super. 93, 97 (App. Div. 1986) (establishing that initial placement on the salary scale for new hires is a term and condition of employment and is negotiable). The remainder of the State's arguments distinguishing the Bethlehem case are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Lastly, we reject the State's argument that compelling negotiations for tenure-upon-hire procedures would impinge upon public policy by interfering with the Colleges' managerial rights. See In re Local 195, IFPTE, 88 N.J. 393 (1982). As the Court recognized In re Local 195, "negotiation will always impinge to some extent on the determination of governmental policy. The

requirement that the interference be 'significant' is designed to effect a balance between the interests of public employees and the requirements of democratic decision making." Id. at 404 (citation omitted). The hypotheticals proffered by the State lack the requisite significant interference to deem tenure-upon-hire procedures non-negotiable. The State did not cite any authority deeming tenure-upon-hire procedures to be unique from procedures that affect terms and conditions of employment, including tenure, so as to be negotiable. See State Supervisory Employees Ass'n, supra, 78 N.J. at 90-91 ("promotional criteria are not mandatorily negotiable while promotional procedures are so negotiable.")

We perceive no ambiguity in the Statute that requires us to reach beyond the plain language to determine its meaning. The Statute is straightforward and contemplates negotiations for adopting procedures relating to tenure-upon-hire.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION